E-FILED
Thursday, 20 May, 2021  04:22:28 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| RUTVIK THAKKAR, WILLIAM GONIGAM, and ANDREA KOHLENBERG, individually and on behalf of all others similarly situated, | Case No. 2:21-cv-2051-CSB-EIL |
| Plaintiffs, | Judge: Hon. Colin S. Bruce |
| v. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| PROCTORU INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiffs Rutvik Thakkar, William Gonigam, and Andrea Kohlenberg ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a class action suit brought against Defendant ProctorU Inc. ("ProctorU" or "Defendant") for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*.  Defendant develops, owns, and operates an eponymous online proctoring software that collects biometric information.

2.     Plaintiffs bring this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendant in collecting, storing and using their and other

similarly situated individuals' biometric identifiers[1] and biometric information[2] (referred to collectively at times as "biometrics"). Defendant failed to provide the requisite data retention and destruction policies, and failed to receive informed consent from Plaintiffs and putative Class members to collect and capture their biometrics.

3.     The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

4.     In recognition of these concerns over the security of individuals' biometrics the Illinois Legislature enacted BIPA, which provides, *inter alia*, that a private entity like Defendant that possesses biometrics must inform individuals in writing of the specific purpose and length of term for which such biometric identifiers or biometric information are being collected, stored and used. 740 ILCS 14/15(b).

5.     Moreover, entities collecting biometrics must publish publicly available written retention schedules and guidelines for permanently destroying biometrics collected. *See* 740 ILCS 14/15(a).

6.     In direct violation of §§ 15(a) and 15(b) of BIPA, Defendant collected, stored and used—without first publishing sufficiently specific data retention and deletion policies—the

---

[1] A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA and "face geometry", among others.

[2] "Biometric information" is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual.

biometrics of hundreds or thousands of students who used Defendant's software to take online exams.

7.      Plaintiffs are students who used ProctorU.  During Plaintiffs' use of the software, ProctorU collected their biometrics, including eye movements and facial expressions (*i.e.*, face geometry) and keystroke biometrics.

8.      BIPA confers on Plaintiffs and all other similarly situated Illinois residents a right to know of such risks, which are inherently presented by the collection and storage of biometrics.

9.      Yet, Defendant failed to provide sufficient data retention or destruction policies and failed to receive informed written consent from Plaintiffs or putative Class members.

10.     Plaintiffs bring this action to prevent Defendant from further violating the privacy rights of Illinois residents and to recover statutory damages for Defendant's improper collection, storage, and protection of these individuals' biometrics in violation of BIPA.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

12.     This Court has personal jurisdiction over Defendant because the biometrics that give rise to this lawsuit (1) belonged to Illinois residents, and (2) were collected by Defendant at Illinois schools or from students taking exams in Illinois.

13.     Plaintiffs' injuries also arise out of or are related to Defendant's business activities in Illinois.  Defendant's business activities in Illinois include its contracts with other Illinois-based schools and entities to proctor exams.  These Illinois-based schools and entities include, but are

not limited to: Illinois Institute of Technology, Illinois REALTORS, Northern Illinois University, Southern Illinois University Carbondale, Southern Illinois University Edwardsville, University of Illinois at Chicago, University of Illinois at Urbana-Champaign, Northwestern University, The Chicago School of Professional Psychology, Bradley University, Aurora University, Governors State University, College of Dupage, William Rainey Harper College, Highland Community College, Oakton Community College, McHenry County College, John A. Logan College, Parkland College, Prairie State College and Shawnee Community College.[3]

14.     By contracting with the above-listed entities for the provision of proctoring services, including the provision of proctoring services that collect biometric information from students.  Thus, Defendant has purposefully directed its activities to Illinois, and purposefully availed itself of the privilege of doing business in Illinois.

15.     Plaintiffs' injuries arise out of or relate to these contracts because, but for Defendant's contracts with these entities, Plaintiffs' biometric information would not have been improperly collected by Defendant.

16.     Defendant also knew its conduct would injure Plaintiffs in Illinois.  According to Defendant's Privacy Policy, "[d]uring testing … [w]e also obtain IP address information to help troubleshoot issues and verify your testing location." (emphasis added).[4]

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District and a substantial part of the events giving rise to Plaintiffs' claims took place within this District because Plaintiff Thakkar's biometrics were collected in this District.

---

[3] CREATE AN ACCOUNT, https://go.proctoru.com/students/users/new (providing a list of institutions that ProctorU provides services for).

[4] https://www.proctoru.com/privacy-policy.

## PARTIES

18.     Plaintiff Rutvik Thakkar is, and has been at all relevant times, a resident of Champaign, Illinois and has an intent to remain there, and is therefore a domiciliary of Illinois.

19.     Plaintiff William Gonigam is, and has been at all relevant times, a resident of Sleepy Hollow, Illinois and has an intent to remain there, and is therefore a domiciliary of Illinois.

20.     Plaintiff Andrea Kohlenberg is, and has been at all relevant times, a resident of Wheaton, Illinois and has an intent to remain there, and is therefore a domiciliary of Illinois.

21.     Defendant ProctorU Inc. is a Delaware corporation with its principal place of business at 2200 Riverchase Center Suite #600, Birmingham, Alabama 35244.  Defendant develops, owns, and operates an online proctoring software of the same that is used throughout Illinois.

## FACTUAL BACKGROUND

### I.      Illinois' Biometric Information Privacy Act

22.     The use of a biometric scanning system entails serious risks.  Unlike other methods of identification, facial geometry is a permanent, unique biometric identifier associated with an individual. This exposes individuals to serious and irreversible privacy risks.  For example, if a device or database containing individuals' facial geometry data is hacked, breached, or otherwise exposed, individuals have no means by which to prevent identity theft and unauthorized tracking.

23.     Recognizing the need to protect citizens from these risks, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") in 2008, to regulate companies that collect and store biometric information, such as facial geometry. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276.

24.     BIPA requires that a private entity in possession of biometrics:

must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

25.     Moreover, entities collecting biometrics must inform individuals "in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used." 740 ILCS 14/15(b)(2).

26.     As alleged below, Defendant violated BIPA §§ 15(a) and 15(b) by failing to specify the length of time that it would retain biometrics, or provide a deletion schedule for biometric information.

## II.     Defendant Violates Illinois' Biometric Information Privacy Act

27.     Defendant develops, owns, and operates an eponymous online proctoring software.

28.     One of the ways in which ProctorU monitors students is by collecting and monitoring their facial geometry.  According to ProctorU's advertising materials, this includes "[m]ultiple face recognition, eye movement tracking, [and] auditory analysis."

29.     Indeed, Defendant's Privacy Policy notes that "[w]e require you to share your photo ID on camera and we use that ID in conjunction with biometric facial recognition software to authenticate your identity.  We also require you to perform a biometric keystroke measurement for some exams."

30.     Defendant's Privacy Policy also states that "[d]uring testing, we automatically track your keystroke pattern to ensure it matches the biometric profile created before the start of your exam."  Keystroke biometrics capture the exact way a student may type.

31.     To capture students' biometrics, Defendant requires students to take a photo as a "baseline" for their appearance before students begin an exam:



32.     By using its facial recognition software, ProctorU can check for "suspicious behavior."  For instance, if a student looks down from their computer screen into their lap (*e.g.,* because a student is looking up an answer on her or her phone), ProctorU will detect this facial movement and record it as a possible instance of cheating:

//

//

//

//

//

//



33.    Defendant uses biometrics to create an identity profile for students and to confirm students' identities during testing so as to prevent cheating.

34.    Online proctoring companies like Defendant have seen a significant uptick in light of the COVID-19 pandemic, which has caused institutions to move exams online. This has led to significant privacy implications for students.

35.     For instance, some students taking the Bar Exam were forced to urinate while being monitored, because if they "broke eye contact," their exams would be terminated.[5]

36.     Other students have broken down in tears during exams, recorded on video by online proctoring companies such as ProctorU.[6]

37.     Students have also published numerous petitions across the country to ask school administrators to cease using online proctoring tools.[7]

38.     Defendant has been in the crosshairs of this debate.  In March 2020, the UC Santa Barbara Faculty Association wrote to the school's chancellor to "express [its] serious concern about the potential widespread adoption of ProctorU."[8]  The faculty argued that ProctorU's infringement on "the privacy and digital rights of our students" was not worth "the expediency of a takehome final exam."  ProctorU responded by threatening the faculty association with a lawsuit for defamation.[9]

---

[5] Staci Zaretskym *Law Students Forced To Urinate While Being Watched By Proctors During Remote Ethics Exam*, ABOVE THE LAW, Aug. 18, 2020, https://abovethelaw.com/2020/08/law-students-forced-to-urinate-while-being-watched-by-proctors-during-remote-ethics-exam/.

[6] Thomas Germain, *Poor Security at Online Proctoring Company May Have Put Student Data at Risk*, CONSUMER REPORTS, Dec. 10, 2020, https://www.consumerreports.org/digital-security/poor-security-at-online-proctoring-company-proctortrack-may-have-put-student-data-at-risk/.

[7] Jason Kelley, *Students Are Pushing Back Against Proctoring Surveillance Apps*, ELECTRONIC FRONTIER FOUNDATION, Sept. 25, 2020, https://www.eff.org/deeplinks/2020/09/students-are-pushing-back-against-proctoring-surveillance-apps.

[8] https://pubcit.typepad.com/files/proctoru_2020-copy.pdf.

[9] Adam Steinbaugh, *ProctorU Threatens UC Santa Barbara Faculty Over Criticism During Coronavirus Crisis*, FIRE, Mar. 26, 2020, https://www.thefire.org/proctoru-threatens-uc-santa-barbara-faculty-over-criticism-during-coronavirus-crisis/; *see also* https://pubcit.typepad.com/files/bradley-bullying-letter.pdf (link to demand letter from ProctorU).

39.     However, these concerns were warranted.  ProctorU has *no time limit* on how long it retains biometrics.[10]   Rather, ProctorU's Privacy Policy simply states that "We retain information for as long as necessary to perform the Services described in this Policy, as long as necessary for us to perform any contract with you or your institution, or as long as needed to comply with our legal obligations."  The Privacy Policy does not have a section on the deletion of biometric information.

40.     The Privacy Policy describes ProctorU's "policies and procedures for the collection, receipt, use, storage, sharing, transfer, disclosure, and other processing of personal information through our websites, browser extensions, platforms, and applications."

41.     In direct violation of BIPA § 15(b)(2), from at least approximately March 2020 through present, Defendant never informed Illinois students who had their facial geometry collected of the length of time for which their biometric identifiers or information would be collected, stored and used.

42.     In direct violation of § 15(a) of BIPA, from at least approximately March 2020 through present, Defendant did not have written, publicly available policies identifying its retention schedules or guidelines, and has continued to retain the biometrics beyond the intended purpose for collection.

## III.    Experience of Plaintiff Rutvik Thakkar

43.     Plaintiff Thakkar is an Illinois domiciliary.  Plaintiff Thakkar used ProctorU to take his Test of English as a Foreign Language ("TOEFL") exam online in January 2021.

---

[10] Jason Kelley & Lindsay Oliver, *Proctoring Apps Subject Students to Unnecessary Surveillance*, ELECTRONIC FRONTIER FOUNDATION, Aug. 20, 2020, https://www.eff.org/deeplinks/2020/09/ students-are-pushing-back-against-proctoring-surveillance-apps

44.     When Plaintiff Thakkar used ProctorU, his facial geometry, including his eye movements and facial expressions, was collected by Defendant.

45.     When Plaintiff Thakkar logged onto ProctorU, his facial geometry would be matched up to the biometrics he provided to Defendant to ensure he was the individual who was supposed to be taking an exam.

46.     Defendant did not inform Plaintiff Thakkar of the specific length of time that it intended to collect, store, and use his biometrics, nor did Defendant provide Plaintiff Thakkar with a retention schedule and guidelines for permanently destroying his biometrics.

47.     Upon information and belief, ProctorU continues to retain Plaintiff Thakkar's biometrics beyond the intend purpose for collection.

48.     Thus, when Plaintiff Thakkar provided his biometrics to Defendant, Defendant collected said biometrics in violation of BIPA §§ 15(a) and 15(b).

49.     At no point during the test, nor during enrollment, did Plaintiff Thakkar provide consideration to or confer a benefit onto Defendant.

50.     Plaintiff Thakkar contracted with Educational Testing Service ("ETS") to take the TOEFL.  ETS did not provide Plaintiff Thakkar with an option on what proctoring service he could use.  If Plaintiff Thakkar declined to use Defendant's service, Plaintiff Thakkar would not have been able to take the TOEFL online on his selected testing date.  This would have drastically impacted Plaintiff Thakkar's future employment and educational prospects.

IV.    **Experience of Plaintiff William Gonigam**

51.     Plaintiff Gonigam is an Illinois domiciliary.  Plaintiff Gonigam used ProctorU to take online exams at the University of Illinois at Urbana-Champaign online from at least June 2019 through at least August 2020.

- 11 -

52.     Plaintiff Gonigam also used ProctorU to take the Graduate Record Examination ("GRE") online in January 2021.

53.     When Plaintiff Gonigam used ProctorU, his facial geometry, including his eye movements and facial expressions, was collected by Defendant.

54.     When Plaintiff Gonigam logged onto ProctorU, his facial geometry would be matched up to the biometrics he provided to Defendant to ensure he was the individual who was supposed to be taking an exam.

55.     Defendant did not inform Plaintiff Gonigam of the specific length of time that it intended to collect, store, and use his biometrics, nor did Defendant provide Plaintiff Gonigam with a retention schedule and guidelines for permanently destroying his biometrics.

56.     Upon information and belief, ProctorU continues to retain Plaintiff Gonigam's biometrics beyond the intend purpose for collection.

57.     Thus, when Plaintiff Gonigam provided his biometrics to Defendant, Defendant collected said biometrics in violation of BIPA §§ 15(a) and 15(b).

58.     At no point during the GRE's administration by Defendant, nor while enrolling for Defendant's services to take the GRE, did Plaintiff Gonigam provide consideration to or confer a benefit onto Defendant.

59.     Plaintiff Gonigam contracted with Educational Testing Service ("ETS") to take the GRE.  Plaintiff Gonigam also contracted with the University of Illinois Urbana-Champaign to take classes that used Defendant's services for online tests.  ETS did not provide Plaintiff Gonigam with an option on what proctoring service he could use.  Plaintiff Gonigam's classes also did not provide him with an option on what proctoring service he could use.  If Plaintiff declined to use Defendant's service, Plaintiff Gonigam would not have been able to take the GRE online on his

selected testing date, nor would Plaintiff Gonigam have been able to satisfy the course requirements for his classes.  This would have drastically impacted Plaintiff Gonigam's future employment and educational prospects.

## V.     Experience of Plaintiff Amanda Kohlenberg

60.     Plaintiff Kohlenberg is an Illinois domiciliary.  Plaintiff Kohlenberg used ProctorU to take her Law School Admission Test (the "LSAT") online in November 2020.

61.     When Plaintiff Kohlenberg used ProctorU, her facial geometry, including her eye movements and facial expressions, was collected by Defendant.

62.     When Plaintiff Kohlenberg logged onto ProctorU, her facial geometry would be matched up to the biometrics she provided to Defendant to ensure she was the individual who was supposed to be taking an exam.

63.     Defendant did not inform Plaintiff Kohlenberg of the specific length of time that it intended to collect, store, and use her biometrics, nor did Defendant provide Plaintiff Kohlenberg with a retention schedule and guidelines for permanently destroying her biometrics.

64.     Upon information and belief, ProctorU continues to retain Plaintiff Kohlenberg's biometrics beyond the intend purpose for collection.

65.     Thus, when Plaintiff Kohlenberg provided her biometrics to Defendant, Defendant collected said biometrics in violation of BIPA §§ 15(a) and 15(b).

66.     At no point during the test, nor during enrollment, did Plaintiff Kohlenberg provide consideration to or confer a benefit onto Defendant.

67.     Plaintiff Kohlenberg contracted with the Law School Admissions Council ("LSAC") to take the LSAT.  LSAC did not provide Plaintiff Kohlenberg with an option on what proctoring service to use.  If Plaintiff Kohlenberg declined to use Defendant's service, Plaintiff

Kohlenberg would not have been able to take the LSAT online on her selected testing date.   This would have drastically impacted Plaintiff Kohlenberg's future employment and educational prospects.

## CLASS ALLEGATIONS

68.   **Class Definition:** Plaintiffs seek to represent a class of similarly situated individuals defined as all Illinois residents who used ProctorU to take an exam online and who had their facial geometry collected, captured, received, or otherwise obtained and/or stored by Defendant (the "Class").

69.   Plaintiff Thakkar seeks to represent a subclass of similarly situated individuals, defined as follows (the "TOEFL Subclass"):

> All Illinois residents who took the TOEFL online from March 2020 through present and who had their facial geometry collected, captured, received, or otherwise obtained and/or stored by Defendant.

70.   Plaintiff Gonigam seeks to represent a subclass of similarly situated individuals, defined as follows (the "UIC Subclass"):

> All students at the University of Illinois at Urbana-Champaign took an online exam from March 2020 through present and who had their facial geometry collected, captured, received, or otherwise obtained and/or stored by Defendant.

71.   Plaintiff Gonigam also seeks to represent a subclass of similarly situated individuals, defined as follows (the "GRE Subclass"):

> All Illinois residents who took the GRE online from March 2020 through present and who had their facial geometry collected, captured, received, or otherwise obtained and/or stored by Defendant.

72.   Plaintiff Kohlenberg seeks to represent a subclass of similarly situated individuals, defined as follows (the "LSAT Subclass"):

> All Illinois residents who took the LSAT online from March 2020 through present and who had their facial geometry collected, captured, received, or otherwise obtained and/or stored by Defendant.

73.     Collectively, the Class, TOEFL Subclass, the UIC Subclass, the GRE Subclass, and the LSAT Subclass shall be known as the "Classes."

74.     Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

75.     **Numerosity:** At this time, Plaintiffs do not know the exact number of members of the aforementioned Classes.  However, given the size of Defendant's business and the number of students who took the TOEFL, LSAT, GRE, or online exams at the University of Illinois Urbana-Champaign, the number of persons within the Classes is believed to be so numerous that joinder of all members is impractical.

76.     **Commonality and Predominance:** There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual members of the Classes include:

> (a) whether Defendant collected or otherwise obtained Plaintiffs' and the Classes' biometric identifiers and/or biometric information;
>
> (b) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;
>
> (c) whether Defendant destroyed Plaintiffs' and the Classes' biometric identifiers and/or biometric information once that information was no longer needed for the purpose for which it was originally collected; and

(d) whether Defendant's violations of BIPA were committed intentionally, recklessly, or negligently.

77.     **Typicality:**  Plaintiffs claims are typical of those of the Classes because Plaintiffs, like all members of the Classes, used ProctorU to take an online exam, and had their biometrics recorded and improperly stored by Defendant in violation of BIPA.

78.     **Adequate Representation:**  Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of the Classes.  Neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes.  Plaintiffs have raised viable statutory claims or the type reasonably expected to be raised by members of the Classes, and will vigorously pursue those claims.  If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Classes, additional claims as may be appropriate, or to amend the definition of the Classes to address any steps that Defendant took.

79.     **Superiority:**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable.  Even if every member of the Classes could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources

- 16 -

of the parties and of the court system and protects the rights of each member of the Classes. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compliance with BIPA.

## COUNT I – FOR DAMAGES AGAINST DEFENDANT
## VIOLATION OF 740 ILCS 14/15(A)

80. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

81. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

82. BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

83. Defendant failed to comply with these BIPA mandates.

84. Defendant is a corporation and does business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

85. Plaintiffs are individuals who their "biometric identifiers" captured and/or collected by Defendant, as explained in detail in above. *See* 740 ILCS 14/10.

86. Plaintiffs' biometric identifiers were used to identify Plaintiffs and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

87. Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

- 17 -

88.    Defendant lacked retention schedules and guidelines for permanently destroying Plaintiffs' and the Classes' biometric data.  As such, the only reasonable conclusion is that Defendant has not, and will not, destroy Plaintiffs' and the Classes' biometric data when the initial purpose for collecting or obtaining such data has been satisfied.

89.    On behalf of themselves and the Classes, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Classes by requiring Defendant to comply with BIPA's requirements for the collection, capture, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## COUNT II – FOR DAMAGES AGAINST DEFENDANT
## VIOLATION OF 740 ILCS 14/15(B)(2)

90.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

91.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

92.    BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data.  Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first … (2) informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used."  740 ILCS 14/15(b)(2).

93.    Defendant failed to comply with these BIPA mandates.

94.     Defendant is a corporation and does business in Illinois and thus qualifies as a "private entity" under BIPA.  *See* 740 ILCS 14/10.

95.     Plaintiffs and the Classes are individuals who have had their "biometric identifiers" collected and/or captured by Defendant, as explained in detail above.  *See* 740 ILCS 14/10.

96.     Plaintiffs' and the Classes' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA.  *See* 740 ILCS 14/10.

97.     Defendant systematically and automatically collected, captured, used, and stored Plaintiffs' and the Classes' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

98.     Defendant never informed Plaintiffs, and never informed any member of the Classes, in writing of the specific length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

99.     By collecting, capturing, storing, and/or using Plaintiffs' and the Classes' biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs' and the Classes' rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA.  *See* 740 ILCS 14/1, *et seq.*

100.    On behalf of themselves and the Classes, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Classes by requiring Defendant to comply with BIPA's requirements for the collection, captures, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of

BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant as follows:

(a)     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Classes and Plaintiffs' attorneys as Class Counsel to represent the members of the Classes;

(b)     For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(e)     An award of statutory penalties to the extent available;

(f)     For pre-judgment interest on all amounts awarded;

(g)     For an order of restitution and all other forms of monetary relief;

(h)     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiffs demand a trial by jury of all issues so triable.

Dated: May 20, 2021

Respectfully submitted,

*/s/ Max S. Roberts*
Max S. Roberts

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
E-mail: malmstrom@whafh.com

*Local Counsel for Plaintiffs
and the Putative Classes*

**BURSOR & FISHER, P.A.**
Alec M. Leslie*
Max S. Roberts
888 Seventh Avenue, Third Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-mail: aleslie@bursor.com
            mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly*
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 679-9006
E-mail: creilly@bursor.com

*\*Application for Admission Forthcoming*

*Attorneys for Plaintiffs
and the Putative Classes*