E-FILED
Thursday, 03 June, 2021  12:55:50 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

|  |  |
|---|---|
| RUTVIK THAKKAR, WILLIAM GONIGAM, and ANDREA KOHLENBERG, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PROCTORU, INC., <br><br> Defendant. | Case No. 2:21-cv-2051-CSB-EIL |

**PROCTORU, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT
FOR LACK OF PERSONAL JURISDICTION
AND FOR FAILURE TO STATE A CLAIM**

Megan M. New (IL SBN 6300422)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
T: (312) 862-2000
F: (312) 862-2200
megan.new@kirkland.com

Thomas J. Butler
Michal Crowder
Caleb C. Wolanek
MAYNARD COOPER & GALE, P.C.
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
T: (205) 254-1000
F: (205) 254-1999
tbutler@maynardcooper.com
mcrowder@maynardcooper.com
cwolanek@maynardcooper.com

*Attorneys for Defendant ProctorU, Inc.*

TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND........................................................................................................... 1

    I.    ProctorU provides remote proctoring services from its Alabama headquarters. ............. 1

    II.    Plaintiffs sued under the Illinois Biometric Information Privacy Act. ........................... 3

LEGAL STANDARDS ................................................................................................... 4

    I.    Federal Rule of Civil Procedure 12(b)(2) ....................................................... 4

    II.    Federal Rule of Civil Procedure 12(b)(6) ...................................................... 4

ARGUMENT ................................................................................................................ 5

    I.    ProctorU is not subject to personal jurisdiction in the State of Illinois. ......................... 5

        A.    ProctorU is not subject to general personal jurisdiction in the State of
             Illinois. ................................................................................................. 5

        B.    ProctorU is not subject to specific personal jurisdiction in the State of
             Illinois. ................................................................................................. 6

            1.    Proctoring an exam over the internet is not a sufficient minimum
                 contact with the State of Illinois. .................................................. 6

            2.    This civil action does not arise out of or relate to any contact with
                 the State of Illinois. .................................................................... 11

            3.    Exercising personal jurisdiction would violate traditional notions of
                 fair play and substantial justice.................................................... 14

    II.    Plaintiffs fail to state a claim on which relief can be granted. ..................................... 15

        A.    ProctorU maintains a publicly available policy about biometric
             information collection, usage, and retention........................................ 16

        B.    The remaining statements in Count One and Two are conclusory and not
             presumed to be true. .............................................................................. 18

CONCLUSION............................................................................................................. 19

CERTIFICATE OF COMPLIANCE ................................................................................ 21

CERTIFICATE OF SERVICE ....................................................................................... 22

<u>INTRODUCTION</u>

ProctorU is an Alabama company that remotely proctors exams over the internet. ProctorU has no physical presence in the State of Illinois, and it does not target test-takers or test providers in Illinois. It also has no control over which State test-takers choose to be in when they take online exams. Instead, where test-takers live or take exams is fortuitous. It is also irrelevant, because this case is about policies and practices that ProctorU develops and implements from its Alabama headquarters. ProctorU itself has no substantial suit-related contact with the State of Illinois. As a result, this Court should dismiss this civil action for lack of personal jurisdiction.

Even if this Court had personal jurisdiction over ProctorU, Plaintiffs also do not plausibly allege a valid claim. Plaintiffs concede ProctorU has a privacy policy, but one of their key allegations—that ProctorU supposedly does not have a schedule for retaining biometric information—contradicts ProctorU's publicly accessible CCPA Privacy Policy (which is incorporated into a policy referenced in the First Amended Complaint ["FAC"]). The rest of the FAC simply parrots the elements of the causes of action and asserts bald legal conclusions.

ProctorU pointed out these defects when it moved to dismiss the initial complaint, leading Plaintiffs to cut half of their causes of action out of the FAC. But the claims Plaintiffs did not drop have the same fatal defects as before. Thus, this Court should dismiss the FAC.[1]

<u>BACKGROUND</u>

I.    <u>ProctorU provides remote proctoring services from its Alabama headquarters.</u>

ProctorU is an industry-leading provider of remote proctoring services for universities and other test providers. (Doc. #21-1, Declaration of Dr. Ashley Norris in Support of ProctorU's Mo-

---

[1]    If this Court grants ProctorU's motion to transfer venue, then there is no need to rule on ProctorU's motion to dismiss.

tion to Dismiss the First Amended Complaint ["Decl."] ¶ 6.) As one would expect, ProctorU monitors exams over the internet. Industry-standard software monitors the testing environment, while human proctors either watch remotely in real time or review a recording after the fact. (*Id.* ¶ 20.) One can access and use this system from anywhere in the United States, as well as internationally. (*Id.* ¶ 22.) Test-takers need not be in any particular State, and the proctoring system is the same regardless of the State in which a test-taker chooses to be. (*Id.* ¶¶ 22, 24.)

ProctorU does not target Illinois test-takers. (*Id.* ¶ 24.) Nor does it target Illinois test providers. (*Id.*) Instead, ProctorU provides remote proctoring services for test providers based in at least 45 States. (*Id.* ¶ 7.) In 2020, for example, ProctorU administered roughly 4.6 million tests for more than 1,000 test providers. (*Id*.)

Though incorporated in Delaware, ProctorU has its headquarters in Birmingham, Alabama. (*Id.* ¶¶ 8–9.) ProctorU is not an Illinois corporation. (*Id.* ¶ 10.) In fact, it has no physical presence of any kind in Illinois: no offices, no employees, no property, no bank accounts, and no computer servers in this State. (*Id.* ¶¶ 11–18.)

ProctorU's Terms of Service, Privacy Policy, and CCPA Privacy Policy are publicly available on ProctorU's website. (*Id.* ¶ 25.) The CCPA Privacy Policy is incorporated by reference into the Privacy Policy. (*Id.* ¶ 26.) Employees working out of ProctorU's Alabama headquarters develop, establish, and maintain the Terms of Service, Privacy Policy, and CCPA Privacy Policy. (*Id.* ¶ 27.) Similarly, Alabama-based employees develop, establish, implement, and maintain ProctorU's policies, procedures, and guidelines governing its privacy and information-governance practices. (*Id.*) ProctorU informs test-takers about the information it captures during a test, and it obtains consent before collecting information during a test. (*Id.* ¶ 28.) Again, Alabama-based employees determine the form and substance of such notices and consent. (*Id.*)

- 2 -

Plaintiffs Rutvik Thakkar, William Gonigam, and Andrea Kohlenberg took online exams proctored by ProctorU. Thakkar took the Test of English as a Foreign Language ("TOEFL") online in January 2021. (FAC ¶ 43.) Gonigam took the Graduate Record Examination ("GRE") online in January 2021. (*Id.* ¶ 52.) Between June 2019 and August 2020, Gonigam also took online exams from the University of Illinois Urbana-Champaign online ("UIUC"). (*Id.* ¶ 51.) Kohlenberg took the Law School Admissions Test ("LSAT") online in November 2020. (*Id.* ¶ 60.)

Educational Testing Service ("ETS") administers the TOEFL and the GRE, and ETS paid ProctorU to proctor those exams. (Decl. ¶¶ 29, 31.) The Law School Admissions Council, Inc. ("LSAC") administers the LSAT, and it paid ProctorU to proctor that exam. (*Id.* ¶¶ 33, 35.) ProctorU provided remote proctoring services to ETS and LSAC for exams taken nationwide. (*Id.* ¶¶ 31, 35.) ProctorU's contracts with ETS and LSAC are not Illinois-specific. (*Id.*) ETS and LSAC are not Illinois companies, and ProctorU did not develop its relationship with ETS or LSAC in Illinois. (*Id.* ¶¶ 30, 34.) ProctorU's contract with UIUC stated that students may participate in testing "from locations outside of the United States." (*Id.* ¶ 38.) That contract also provided that "students will pay all proctoring fees." (*Id.* ¶ 37.)

## II.  <u>Plaintiffs sued under the Illinois Biometric Information Privacy Act.</u>

Plaintiffs filed this putative class action against ProctorU in March 2021. (Doc. #1.) ProctorU moved to dismiss the initial complaint for lack of personal jurisdiction and for failure to state a claim. (Doc. #9.) Rather than respond to ProctorU's motion to dismiss, Plaintiffs filed the FAC. (Doc. #18.) In doing so, Plaintiffs dropped half of their initial causes of action. (*Compare* Doc. #1 at 18–23, *with* FAC at 17–20.)

In the FAC, Plaintiffs allege ProctorU collected their "biometric data" so it could monitor them while they took online exams. Plaintiffs assert two causes of action under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.* In Count One, Plaintiffs allege

- 3 -

ProctorU did not sufficiently establish or maintain a data retention and deletion policy. (FAC ¶¶ 80–89.) In Count Two, they allege ProctorU did not tell Plaintiffs how long their biometric information would be collected, stored, and used and did not obtain required consent to collect and store biometric data. (*Id.* ¶¶ 90–100.)

**LEGAL STANDARDS**

## I. Federal Rule of Civil Procedure 12(b)(2)

The Fourteenth Amendment's Due Process Clause limits a court's power to exercise personal jurisdiction over out-of-State defendants. *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of proving that personal jurisdiction exists. *Shrum v. Big Lots Stores, Inc.*, No. 14-cv-3135, 2014 WL 6888446, at \*3 (C.D. Ill. Dec. 8, 2014) (Bruce, J.). A defendant may submit evidence in support of a Rule 12(b)(2) motion. *See id.*

## II. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts do not accept bare legal conclusions as true, *id.*, and a plaintiff must allege enough *facts* "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

When deciding a Rule 12(b)(6) motion to dismiss, a court may consider documents not attached to the complaint if those documents are "referenced in the pleading" and "central to the claim." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). "This rule is a liberal one," *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018), and it "prevent[s] parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents," *118 LLC v.*

*Trinity Indus.*, 300 F.3d 730, 735 (7th Cir. 2002). When such documents contradict allegations in the complaint and are exhibits to a motion to dismiss, "'the exhibits trump the allegations.'" *Bland v. Edward D. Jones & Co.*, 375 F. Supp. 3d 962, 983 (N.D. Ill. 2019) (quoting *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010)).

<u>**ARGUMENT**</u>

**I.      <u>ProctorU is not subject to personal jurisdiction in the State of Illinois.</u>**

Courts recognize two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017). Under either type of personal jurisdiction, the "primary focus … is the defendant's relationship to the forum State." *Id.* Under the facts here, ProctorU is not subject to either type of jurisdiction in the State of Illinois.

**A.      ProctorU is not subject to general personal jurisdiction in the State of Illinois.**

When a court has general personal jurisdiction over a defendant, it "may hear any claim against that defendant." *Id.* But to be subject to that general personal jurisdiction in this State, a corporation's Illinois contacts must be "'so constant and pervasive as to render it essentially at home'" here. *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015) (citation omitted). Only a limited set of contacts can pass that onerous test. *See id.* None exist here.

"The 'paradigm' forums in which a corporate defendant is 'at home' … are the corporation's place of incorporation and its principal place of business." *BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (citation omitted). But, as Plaintiffs admit, ProctorU is incorporated in Delaware and has its principal place of business in Alabama. (FAC ¶ 21.) Thus, ProctorU could be subject to general personal jurisdiction here *only* if it were an "'exceptional case.'" *BNSF*, 137 S. Ct. at 1558 (citation omitted). It is not, and again, to be subject to general personal jurisdiction in Illinois, a defendant must be "'essentially at home'" in this State. *Shrum*, 2014 WL 6888446, at *6 (citation omitted). ProctorU has no offices, property, or employees in Illinois. (Decl. ¶¶ 12–14.)

Thus, ProctorU is not subject to general personal jurisdiction in Illinois.

>    **B.**    **ProctorU is not subject to specific personal jurisdiction in the State of Illinois.**

Unlike general personal jurisdiction, specific personal jurisdiction focuses on "'the relationship among the defendant, the forum, and the litigation.'" *Brook*, 873 F.3d at 552 (citation omitted). And before a court can exercise specific personal jurisdiction, the plaintiff must meet three requirements. *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019) (Barrett, J.). *First*, "the defendant's contacts with the forum state must show that it purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state." *Id.* (cleaned up). *Second*, the plaintiff's specific claims "'must arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (citation omitted). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers*, 137 S. Ct. at 1780 (cleaned up). *Third*, "any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Lexington*, 938 F.3d at 878.

Plaintiffs cannot satisfy that test. Any contacts ProctorU has with the State of Illinois have no significant relationship to this lawsuit. This civil action does not arise out of or relate to those contacts. It is also unfair to subject ProctorU to personal jurisdiction under these facts. Thus, this Court lacks specific personal jurisdiction over ProctorU.

>    **1.**    ***Proctoring an exam over the internet is not a sufficient minimum contact with the State of Illinois.***

The first prong of the specific personal jurisdiction analysis asks whether there is a contact between ProctorU and the State of Illinois. *Id.* That connection with Illinois must be "substantial."

*Walden v. Fiore*, 571 U.S. 277, 284 (2014). And the "core focus" is "always" on ProctorU's conduct. *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 578 (7th Cir. 2020).

Under this framework, "contacts between [Illinois] and a third party or plaintiff—no matter how significant—cannot satisfy minimum contacts." *Shrum*, 2014 WL 6888446, at \*5. It is also not enough for a defendant to have a contact with an Illinois resident. *See Lexington*, 938 F.3d at 879 (explaining "deliberate contact with the resident of a state is not the same thing as deliberate contact with the state itself"). "Rather, 'the relationship must arise out of contacts that the defendant [*itself*] creates with the forum State,' and 'the defendant's contacts with the forum State itself.'" *Brook*, 873 F.3d at 552–53 (quoting *Walden*, 571 U.S. at 284–85). This shields defendants from being haled into court based on "random, fortuitous, or attenuated contacts" or the "unilateral activity of another party or a third person." *Walden*, 571 U.S. at 286 (cleaned up).

These same rules apply in the internet context. Even when a defendant operates "a 'highly interactive' website" that is "accessible" in Illinois, "the defendant may not be haled into court" in Illinois unless it "targeted" that State. *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011); *see id.* ("Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market."). That is because "the operation of an interactive website does not show that the *defendant* has formed a contact" with Illinois. *Adv. Tactical Ordnance Sys. v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014).

Following these well-established principles, courts in this State have repeatedly held they lacked personal jurisdiction over out-of-State defendants in cases about the Illinois Biometric Information Privacy Act—even when the plaintiffs lived in Illinois. *See Bray v. Lathem Time Co.*, No. 19-cv-3157, 2020 WL 1492742, at \*5 (C.D. Ill. Mar. 27, 2020); *Stein v. Clarifai, Inc.*, No. 20-cv-1937, 2021 WL 1020997, at \*5 (N.D. Ill. Mar. 16, 2021); *McGoveran v. Amazon Web Servs.,*

- 7 -

*Inc.*, 488 F. Supp. 3d 714, 724 (S.D. Ill. 2020); *Salkauskaite v. Sephora USA, Inc.*, No. 18-cv-8507, 2020 WL 2796122, at \*7 (N.D. Ill. May 30, 2020); *Gullen v. Facebook.com, Inc.*, No. 15-cv-7681, 2016 WL 245910, at \*3 (N.D. Ill. Jan. 21, 2016). This Court should reach the same con-clusion. For at least four related reasons, the mere fact that Plaintiffs took exams proctored by ProctorU does not mean ProctorU has a sufficient contact with the State of Illinois itself.

*First*, ProctorU has no physical presence in the State of Illinois. ProctorU has no property, offices, or employees here. (Decl. ¶¶ 12–14.) Nor does it own, lease, or operate computer servers in Illinois. (*Id.* ¶ 18.) Its headquarters are in Alabama. (*Id.* ¶ 9.) Employees working out of Ala-bama establish and implement ProctorU's privacy and information-governance practices. (*Id.* ¶ 27.) Likewise, its Alabama-based employees determine when and how ProctorU obtains consent to collect test-takers' information. (*Id.* ¶ 28.)

*Second*, from its Alabama headquarters, ProctorU provides remote proctoring services na-tionwide. (*Id.* ¶¶ 7, 22, 24.) Software monitors the testing environment, while human proctors (none of whom are in Illinois) either watch remotely in real time or review a recording after the fact. (*Id.* ¶¶ 14, 20.) ProctorU does not geographically restrict that system within the United States. (*Id.* ¶ 22.) It does not require test-takers to be in Illinois—or in any other State. (*Id.*) Nor does ProctorU target Illinois test-takers or Illinois test providers. (*Id.* ¶ 24.) Test-takers from any State can access and use ProctorU's system from anywhere in the country, as well as internationally, and the system is the same regardless of the State in which a test-taker chooses to be. (*Id.*) So just as the operator of a "highly interactive" website is not subject to personal jurisdiction in every State, *be2 LLC*, 642 F.3d at 559, neither is ProctorU subject to personal jurisdiction in Illinois. *See Gullen*, 2016 WL 245910, at \*2 ("Because plaintiff does not allege that Facebook targets its al-leged biometric collection activities at Illinois residents, the fact that its site is accessible to Illinois

residents does not confer specific jurisdiction over Facebook.").

*Third*, the contracts that enabled ProctorU to proctor Plaintiffs' exams are not Illinois-specific. Rutvik Thakkar took a ProctorU-proctored TOEFL, and William Gonigam took a ProctorU-proctored GRE. (FAC ¶¶ 43, 52.) Educational Testing Service administers both exams, and ETS paid ProctorU to proctor the TOEFL and the GRE. (Decl. ¶¶ 29, 31.) ProctorU did not develop its business relationship with ETS in Illinois. (*Id.* ¶ 30.) Nor is ETS an Illinois company; it appears to be incorporated in New York and have its principal place of business in New Jersey. (*Id.*)[2] And just as people everywhere take the TOEFL and the GRE, ProctorU provided remote proctoring services to ETS for exams taken nationwide. (*Id.* ¶ 31.) ProcorU's contract with ETS neither referenced Illinois nor limited ProctorU's services to proctoring exams taken by Illinois test-takers. (*Id.*) That Illinois residents chose to take the GRE and the TOEFL has nothing to do with ProctorU.

Similarly, Andrea Kohlenberg took a ProctorU-proctored LSAT. (FAC ¶ 60.) The Law School Admissions Council administers that test, and LSAC paid ProctorU to proctor the LSAT. (Decl. ¶¶ 33, 35.) LSAC is not an Illinois company; it seems to be incorporated in Delaware and have its headquarters in Pennsylvania. (*Id.* ¶ 34.)[3] ProctorU's contract with LSAC neither referenced Illinois nor limited ProctorU's services to proctoring exams taken by Illinois test-takers. (*Id.* ¶ 35.) Instead, ProctorU provided remote proctoring services to LSAC for exams taken nationwide. (*Id.*) It was not ProctorU's call whether an Illinois resident would take the LSAT.

Even for exams Gonigam took while attending "the University of Illinois Urbana-Champaign online" (FAC ¶ 51), neither Gonigam nor his fellow UIUC students had to be in Illinois (*see* Decl. ¶ 38). Though ProctorU had a contract with UIUC, that contract stated that students might

---

[2]     *Cf. In re Educ. Testing Serv.*, 517 F. Supp. 2d 832, 835 (E.D. La. 2007).
[3]     *Cf. Yaghoubzadeh v. Law Sch. Admission Council, Inc.*, No. 20-cv-138, 2020 WL 7050578, at *5 (C.D. Cal. July 16, 2020).

participate in testing "from locations outside of the United States." (*Id.*) That contract also provided that individual test-takers, who could choose to be anywhere in the country, would pay the proctoring fees. (*Id.* ¶ 37.) As a result, ProctorU's incidental "contract with a forum resident is not enough" for personal jurisdictional. *Lexington*, 938 F.3d at 880.

*Fourth*, ProctorU has no control over the State in which any test-taker chooses to be when taking an exam. Plaintiffs alone chose where to take an exam proctored by ProctorU. Plaintiffs chose to reside in Illinois, but they just as easily could have been in Idaho. Though ProctorU allegedly knew where Plaintiffs took their exams, that location was fortuitous. *See Adv. Tactical*, 751 F.3d at 801 ("The connection between the place where an email is opened and a lawsuit is entirely fortuitous."); *McGoveran*, 488 F. Supp. 3d at 723 (refusing to establish personal jurisdiction on the fact that plaintiffs were in Illinois when they made phone calls). In fact, Plaintiffs' definitions of the proposed classes do not specify where the would-be class members took exams (*see* FAC ¶¶ 68–72)—undermining any theory that ProctorU had a contact with the State of Illinois itself. And it does not matter whether it was foreseeable that a test-taker would be in Illinois, because as this Court has recognized, "'foreseeability alone has never been a sufficient benchmark for personal jurisdiction.'" *Shrum*, 2014 WL 6888446, at *5 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)) (cleaned up); *see Lexington*, 938 F.3d at 881–82.

In short, Plaintiffs' residence is the only link between this case and this State. That is not enough. *Adv. Tactical*, 751 F.3d at 802. As then-Judge Barrett explained, "deliberate contact with the resident of a state is not the same thing as deliberate contact with the state itself." *Lexington*, 938 F.3d at 879. And as this Court recognized, the specific personal jurisdiction analysis asks "'not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct

connects [it] to the forum in a meaningful way.'" *Shrum*, 2014 WL 6888446, at *6 (quoting *Walden*, 571 U.S. at 290). Thus, Plaintiffs' residence and test-taking is not a sufficient contact with this State.

### 2. *This civil action does not arise out of or relate to any contact with the State of Illinois.*

Plaintiffs also fail at the second step of the specific personal jurisdiction analysis. At that step, Plaintiffs must show that their specific claims "directly arise out of," or are "directly related to," ProctorU's own contacts with Illinois. *Lexington*, 938 F.3d at 884 n.7 (cleaned up); *see Ford Motor Co.*, 141 S. Ct. at 1025 ("The plaintiff's claims … must arise out of or relate to the defendant's contacts with the forum." (cleaned up)). In other words, "jurisdiction must rest on the *litigation-specific* conduct" of ProctorU in Illinois. *Adv. Tactical*, 751 F.3d at 801.[4] Without a "connection between the forum and the specific claims at issue," there is no personal jurisdiction, "regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781; *see Shrum*, 2014 WL 6888446, at *4.

Plaintiffs cannot satisfy this prong of the analysis. Though Plaintiffs allege ProctorU collected their data so it could monitor them while they took exams (*see, e.g.*, FAC ¶¶ 6–7), this civil action is not about anything physically in Illinois. For example, Plaintiffs never allege personal injury or property damage. Instead, Plaintiffs challenge whether ProctorU sufficiently established and maintained a data retention and deletion policy (*id.* ¶¶ 87–88) and whether it obtained written consent to collect and store biometric data (*id.* ¶¶ 97–99).

None of those challenged actions occurred in Illinois, and none of the alleged inactions should have occurred in Illinois. ProctorU makes the relevant decisions at its Alabama headquar-

---

[4]     *See Walden*, 571 U.S. at 284 (focusing on "suit-related conduct").

ters. Alabama-based employees develop, establish, implement, and maintain the policies, proce-
dures, and guidelines governing ProctorU's privacy and information-governance practices. (Decl.
¶ 27.) Alabama-based employees likewise determine when and how ProctorU obtains consent to
collect information from test-takers. (*Id.* ¶ 28.) ProctorU's allegedly unlawful acts and omis-
sions—its policies and practices about biometric data—have "little to do with Illinois." *Matlin v.
Spin Master Corp.*, 921 F.3d 701, 707 (7th Cir. 2019) (finding no personal jurisdiction when the
plaintiff challenged a foreign defendant's refusal to pay royalties on products, even when the de-
fendant sold royalty-generating products in Illinois). So just as the Northern District of Illinois
lacked personal jurisdiction when an Illinois plaintiff challenged an Iowa company's Iowa-based
failure to provide a statutory notice, *see Ratliff v. Don Hummer Trucking Corp.*, No. 17-cv-7173,
2018 WL 950092, at *3 (N.D. Ill. Feb. 20, 2018), there is no personal jurisdiction here.[5]

---

[5]     The personal-jurisdiction cases Plaintiffs cited in opposing a stay of discovery are easily
distinguishable. In *Innovative Garage Door Co. v. High Ranking Domains, LLC*, for example, the
defendant had an (allegedly) indefinite contract to sell business "leads" to the plaintiff, an Illinois
garage-door repair company. 981 N.E.2d 488, 492–93 (Ill. App. Ct. 2012). The defendant's web-
site was "unquestionably" and "expressly directed" at the State of Illinois; it "specifically" invited
Illinois residents to fill out forms seeking information about services in their location. *Id.* at 499.
The defendant "arranged business transactions between the Illinois business and what were pri-
marily Illinois consumers," *id.* at 498, "paired consumers with contractors based on geography,"
*id.* at 500, and sold the Illinois plaintiff roughly 150 leads a year for about 3½ years, *id.* at 493.
Thus, the defendant was subject to personal jurisdiction for the plaintiff's breach-of-contract claim.
*Id.* at 502. In *Aasonn, LLC v. Delaney*, the defendant had a multi-year contract to provide consult-
ing services to an Illinois company. 961 N.E.2d 939, 944 (Ill. App. Ct. 2011). That contract had
an Illinois choice-of-law provision, and for over two years, the defendant worked for, submitted
bills to, and received payment from the Illinois plaintiff. *Id.* at 944, 948. Thus, the defendant was
subject to personal jurisdiction for a claim that its bills were fraudulent. *Id.* at 950. And in *uBid,
Inc. v. The GoDaddy Group*, the defendant (allegedly) intentionally violated an Illinois company's
trademarks by selling "confusingly similar" domain names to Illinois customers. 623 F.3d 421,
425 (7th Cir. 2010); *see id.* at 431–33. That defendant also had "extensive" contacts with Illinois,
including billboards at Wrigley Field. *Id.* at 432–33. This case looks nothing like *Innovative*, *Aa-
sonn*, or *uBid*. Unlike the *Innovative* and *Aasonn* plaintiffs, for example, Plaintiffs argue they had
*no* contract with ProctorU. (FAC ¶¶ 49, 58, 66.) And unlike the *uBid* defendant, ProctorU did not
sell illegal products to Illinois consumers.

In fact, Plaintiffs do not even define their proposed class and sub-classes based on *where* test-takers took exams; Plaintiffs seem to think it is enough that an Illinois resident "used ProctorU to take an exam online." (FAC ¶ 68.) That proposed class definition would include an Illinois resident who went to college in St. Louis or took the GRE online while vacationing in Orlando— confirming that Plaintiffs' claims do not arise out of or relate to any contact with the State of Illinois itself.

Similarly, ProctorU's contract with UIUC does not "'bear on the substantive legal dispute between the parties or relate to the operative facts of the case.'" *Shrum*, 2014 WL 6888446, at *4 (quoting *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024 (7th Cir. 2009)). This civil action concerns ProctorU's alleged collection of biometric data—not its contract with any test-provider. *See Bray*, 2020 WL 1492742, at *3 (dismissing BIPA claims for lack of personal jurisdiction even though the defendant's product could be bought in Illinois; explaining the lawsuit did not concern the defendant's sales). Because ProctorU's relationship with UIUC is not "suit-related," it is "irrelevant to the specific jurisdiction analysis." *Stein*, 2021 WL 1020997, at *3 (holding the defendant's "contractual relationship with [an Illinois company], which [did] not appear to have any bearing on the claims at issue," was "irrelevant").[6]

It is likewise irrelevant that ProctorU allegedly has contracts with other test providers in Illinois. *See id.* Nor is it true that ProctorU's alleged contracts with Illinois test providers are a "but for" cause of the alleged collection of Plaintiffs' information. (*Contra* FAC ¶ 15.) After all, ETS

---

[6]     *Ford Motor Co. v. Montana Eight Judicial District Court*, 141 S. Ct. 1017 (2021), does not affect this conclusion. There, the Supreme Court addressed products-liability suits in which the plaintiffs bought defective cars in their home states, the plaintiffs suffered physical injury in those states, Ford sold the same types of cars in those states, and Ford sold replacement parts and repair services in those states. *Id.* at 1023–24; *id.* at 1032 (Alito, J., concurring in the judgment). That Court did not change the rule that specific jurisdiction must be "case-linked." *Id.* at 1027 n.3 (majority opinion). And that Court noted it was not considering "internet transactions." *Id.* at 1028 n.4.

and LSAC are not Illinois companies. (*Supra* at p. 9.) And, in any event, "the Seventh Circuit has specifically rejected 'but for' causation as the test for whether a claim sufficiently 'arises out of' contacts with the forum state." *Yokohama Trading, Inc. v. C&K Auto Imports*, No. 12-cv-3438, 2013 WL 3177762, at *6 (N.D. Ill. June 21, 2013) (citing *uBid*, 623 F.3d at 430).

Even if there were some claim-related link between ProctorU and the State of Illinois, that would *still* not justify the exercise of personal jurisdiction because that link would not be "substantial." *Walden*, 571 U.S. at 284. Similarly, this civil action does not "directly" arise out of or relate to any forum contacts. *Brook*, 873 F.3d at 552; *GCIU-Emp.*, 565 F.3d at 1024. The policies and practices of an Alabama company are at the heart of this case. Any link to Illinois is random, fortuitous, or attenuated. So there is no personal jurisdiction here.

### 3. *Exercising personal jurisdiction would violate traditional notions of fair play and substantial justice.*

Because this civil action does not arise out of or relate to any contacts that ProctorU has with the State of Illinois, there is no need to decide whether exercising personal jurisdiction would offend "traditional notions of fair play and substantial justice." *See N. Grain Mktg. v. Greving*, 743 F.3d 487, 496 (7th Cir. 2014). But even if that analysis were necessary, it would show that it is unconstitutionally unfair to exercise personal jurisdiction over ProctorU.

In evaluating whether personal jurisdiction is unconstitutionally unfair, the "primary concern is the burden on the defendant." *Bristol-Myers*, 137 S. Ct. at 1780 (cleaned up). That concern counsels against exercising personal jurisdiction over ProctorU in this civil action. ProctorU is an Alabama company, and it has no offices, property, or employees in the State of Illinois. (Decl. ¶¶ 9–14.) Comparatively, then, it would be more burdensome for ProctorU to litigate in Illinois than in Alabama.[7]

---

[7]     To be clear, personal jurisdiction is not just about fairness; it is also about due process. *See*

Moreover, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" and "the shared interest of the several States in furthering fundamental substantive social policies" both favor litigating this dispute in Alabama. *World-Wide Volkswagen*, 444 U.S. at 292. This case concerns how an Alabama company runs its business from its Alabama headquarters. The State of Alabama has a strong interest in claims that an Alabama company's practices were unlawful. And as ProctorU showed in its motion to transfer venue, Plaintiffs agreed to ProctorU's Terms of Service, which include an Alabama forum-selection clause. (*See* Decl. Ex. 1 at 5.) Because Plaintiffs agreed to that forum-selection clause, they cannot claim an Alabama court would provide inconvenient or ineffective relief.

For these reasons, ProctorU is not subject to personal jurisdiction in the State of Illinois. This Court should therefore dismiss the FAC under Rule 12(b)(2).

## II. Plaintiffs fail to state a claim on which relief can be granted.

Even if this Court did have personal jurisdiction over ProctorU (it does not), Plaintiffs fail to state a valid claim. Count One of the FAC alleges ProctorU did not establish and provide a schedule or guideline for retaining and deleting biometric information. (FAC ¶¶ 87–88). Count Two alleges ProctorU did not inform Plaintiffs in writing of how long their biometric identifiers or biometric information would be collected, stored, and used. (*Id.* ¶ 98.)

Those counts fail for two reasons. *First*, despite what Plaintiffs allege, ProctorU maintains a publicly available, online schedule about its information-retention and -deletion practices. That schedule tells Plaintiffs in writing how long biometric identifiers or biometric information would be collected, used, and stored. *Second*, Plaintiffs' remaining allegations are legal conclusions that lack any factual foundation. So the FAC should be dismissed under Rule 12(b)(6).[8]

---

*World-Wide Volkswagen*, 444 U.S. at 294.

[8]    Plaintiffs repeatedly refer to ProctorU's collection of keystroke biometrics, implying that

## A. ProctorU maintains a publicly available policy about biometric information collection, usage, and retention.

Plaintiffs allege ProctorU does not have a schedule for retaining biometric information and did not tell Plaintiffs about the purpose and length of time for which their biometric identifiers would be collected, stored, and used. (*See* FAC ¶¶ 6, 83, 87–88, 93, 98.) Counts One and Two hinge on that allegation. (*Id.* ¶¶ 87–88, 93, 98.) But contrary to that allegation, ProctorU maintains and publishes two privacy policies that detail how ProctorU collects and processes information. In the first—known simply as the "Privacy Policy"—ProctorU provides general information about its data-handling practices and its data-retention schedule. (Decl. Ex. 2.) In the second—the "CCPA Privacy Policy"—ProctorU provides more information about its retention and deletion policy for biometric information. (Decl. Ex. 3.) Both policies are publicly available on ProctorU's website at *www.proctoru.com/privacy-policy* and *www.proctoru.com/ca-privacy-policy*.

According to Plaintiffs, ProctorU must publish publicly available written retention schedules and guidelines for permanently destroying biometrics collected. (FAC ¶ 82.) ProctorU has done so. Specifically, ProctorU's publicly available CCPA Privacy Policy informs test-takers that:

> The information collected from your photo identification will be matched with the image to create a biometric faceprint in order to confirm your identity. Your biometric faceprint is destroyed within seconds after our third party service provider performs its facial match analysis, and the only information provided to our proctors is a percentage match score to help them verify your identity. The information used to verify your identity is only shared with the proctor

---

BIPA applies to keystroke dynamics. (FAC ¶¶ 7, 29–30.) Plaintiffs' argument fails. Whether BIPA applies depends on that statute's text. *Cothron v. White Castle Sys.*, 477 F. Supp. 3d 723, 731 (N.D. Ill. 2020). BIPA applies to "biometric identifiers" and "biometric information," 740 ILCS 14/15, and it defines both terms. A "biometric identifier" is a "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. "Biometric information" is information "based on an individual's biometric identifier used to identify an individual," and it "does not include information derived from items or procedures excluded under the definition of biometric identifiers." *Id.* Keystroke dynamics are not based on "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* Thus, they are not covered under BIPA. *See Hazlitt v. Apple Inc.*, No. 20-cv-421, 2020 WL 6681374, at *8 (S.D. Ill. Nov. 12, 2020) ("BIPA exhaustively defines what is a biometric identifier").

administering your test, our identity verification service provider, and with your certification or testing institution.

(Decl. Ex. 3 at 2.) This informs Plaintiffs—in writing—how long (and for what purpose) their biometric identifiers or biometric information will be collected, stored, and used. The CCPA Privacy Policy is a published document that details ProctorU's retention schedule and guidelines for destroying biometric information and identifiers. (*Id.* at 2–3.) The existence of the CCPA Privacy Policy—and the published retention schedule in it—directly contradict Plaintiffs' claim that ProctorU "failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information." (FAC ¶ 87.) The CCPA Privacy Policy also contradicts Plaintiffs' assertion that ProctorU "never informed Plaintiffs … in writing of the specific length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated." (*Id.* ¶ 98.)[9]

This Court may consider ProctorU's Privacy Policy and CCPA Privacy Policy (collectively, "Policies") at this juncture. Plaintiffs reference the Privacy Policy in the FAC (*id.* ¶¶ 29–30, 39), and the Privacy Policy incorporates the CCPA Privacy Policy by reference (Decl. Ex. 2 at 4). Both Policies are central to the claims that ProctorU did not provide a publicly available retention schedule for biometric data and did not tell Plaintiffs how long their biometric identifiers would be collected, stored, or used. ProctorU has provided this Court with copies of both Policies, and both are publicly available online. As a result, this Court is free to consider those documents in the procedural context of ProctorU's motion to dismiss. *See Bogie*, 705 F.3d at 609.[10] And

---

[9]    Plaintiffs erroneously cite "dissemination" as an activity regulated by § 15(b) of BIPA. (*See* FAC ¶¶ 98, 100.) Section 15(b) does not refer to "disseminated" information, *see* 740 ILCS 14/15(b), and Plaintiffs have alleged no facts suggesting that ProctorU "disseminated" biometric identifiers in violation of BIPA.

[10]    Courts may also take judicial notice of the "'full contents'" of documents referenced in a complaint. *Patel v. Zillow, Inc.*, No. 17-cv-4008, 2017 WL 3620812, at *1 n.2 (N.D. Ill. Aug. 23, 2017) (quoting *Twombly*, 550 U.S. at 568 n.13), *aff'd*, 915 F.3d 446 (7th Cir. 2019). Thus, this

because the Privacy Policy and CCPA Privacy Policy "incontrovertibly contradict[] the allegations in the complaint," the text of the written Policies control. *Id.*; *see Bland*, 375 F. Supp. 3d at 983.

## B.   The remaining statements in Count One and Two are conclusory and not presumed to be true.

Plaintiffs' other statements in Counts One and Two are no more than bald conclusions of law that this Court should disregard. For example, Plaintiffs characterize BIPA's requirements (*see* FAC ¶¶ 82, 92) and assert that ProctorU "failed to comply with these BIPA mandates" (*id.* ¶¶ 83, 93). To survive a motion to dismiss, however, Plaintiffs cannot "merely parrot the statutory language." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). They "must offer more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. So this Court should not accept as true Plaintiffs' allegation that ProctorU "failed to comply" with BIPA.

Plaintiffs also allege ProctorU collected, used, and stored biometric information "without first publishing *sufficiently specific* data retention and deletion policies." (FAC ¶ 6 (emphasis added).) In doing so, Plaintiffs concede the existence of the very policy upon whose absence Count One depends. BIPA also contains no specificity standard, and Plaintiffs allege no facts to suggest how ProctorU's Privacy Policy falls short of that supposed standard. Plaintiffs merely assert unsupported labels and conclusions. That will not do. *Iqbal*, 556 U.S. at 678.

Similarly, this Court should disregard paragraph 88 of the FAC. There, Plaintiffs assert: "Defendant lacked retention schedules and guidelines for permanently destroying Plaintiffs' and the Classes' biometric data. As such, *the only reasonable conclusion* is that Defendant has not, and will not, destroy Plaintiffs' and the Classes' biometric data when the initial purpose for

---

Court may take judicial notice of the Privacy Policy and the incorporated CCPA Privacy Policy.

collecting or obtaining such data has been satisfied." (FAC ¶ 88 (emphasis added).) That is a conclusory statement that asks the Court to infer liability based on the unfounded allegation that ProctorU does not destroy biometric data. Because Plaintiffs' statement is no more than a conclusion, it is not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 679; *see Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020) (dismissing BIPA claims when the plaintiff made no specific factual allegations but only "parrot[ed] the statutory language").

The same goes for paragraph 97 of the FAC, where Plaintiffs assert that "Defendant systematically and automatically collected, captured, used, and stored Plaintiffs' and the Classes' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3)." (FAC ¶ 97.) That conclusion comes out of nowhere; Plaintiffs allege no facts about whether they were presented with a written release. (*See id.* ¶¶ 43–67.) And because Plaintiffs allege no facts to support their legal conclusion, it cannot be presumed to be true. *Iqbal*, 556 U.S. at 679.

## CONCLUSION

For the reasons above, this Court should dismiss this civil action for lack of personal jurisdiction. This Court should also dismiss the First Amended Complaint for failure to state a claim.

Respectfully submitted this the 3rd day of June, 2021,

/s/ *Thomas J. Butler*

Megan M. New (IL SBN 6300422)  Thomas J. Butler
KIRKLAND & ELLIS LLP             Michal Crowder
300 North LaSalle                Caleb C. Wolanek
Chicago, IL 60654                MAYNARD COOPER & GALE, P.C.
T: (312) 862-2000                1901 Sixth Avenue North, Suite 1700
F: (312) 862-2200                Birmingham, AL 35203
megan.new@kirkland.com           T: (205) 254-1000
                                 F: (205) 254-1999
                                 tbutler@maynardcooper.com
                                 mcrowder@maynardcooper.com
                                 cwolanek@maynardcooper.com

*Attorneys for Defendant ProctorU, Inc.*

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum complies with Local Rule 7.1(B)(4)(b)(1). According to the word-count feature in Microsoft Word, this memorandum contains 6,997 words and 44,516 characters.

/s/ *Thomas J. Butler*
Of Counsel

**CERTIFICATE OF SERVICE**

I certify that on June 3, 2021, I e-filed the foregoing with the Clerk of Court using the

CM/ECF system, which will send notification of such filing to the following:

Carl V. Malmstrom
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
malmstrom@whafh.com

Max S. Roberts
BURSOR & FISHER, P.A.
888 Seventh Avenue, Third Floor
New York, NY 10019
mroberts@bursor.com

/s/ *Thomas J. Butler*
Of Counsel