E-FILED
Wednesday, 07 July, 2021  12:51:28 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

|  |  |
|---|---|
| RUTVIK THAKKAR, WILLIAM GONIGAM, and ANDREA KOHLENBERG, individually and on behalf of all others similarly situated, | Case No. 2:21-cv-2051-CSB-EIL |
| Plaintiffs, | Hon. Colin S. Bruce |
| v. | |
| PROCTORU INC., | |
| Defendant. | |

## PLAINTIFFS' OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
E-mail: malmstrom@whafh.com

*Local Counsel for Plaintiffs
and the Putative Classes*

**BURSOR & FISHER, P.A.**
Alec M. Leslie
Max S. Roberts
888 Seventh Avenue, Third Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-mail: aleslie@bursor.com
            mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly*
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 679-9006
E-mail: creilly@bursor.com

*\*Admission Application
Forthcoming*

*Attorneys for Plaintiffs
and the Putative Classes*

## <u>TABLE OF CONTENTS</u>

**PAGE(S)**

INTRODUCTION .................................................................................................................1

LEGAL STANDARD...........................................................................................................3

ARGUMENT .......................................................................................................................4

    I.    THE COURT POSSESSES SPECIFIC PERSONAL JURISDICTION OVER
    PROCTORU ................................................................................................................4

        A.    ProctorU Purposefully Directed Its Activities At Illinois...........................5

        B.    Plaintiffs' Claims Arise Out Of Or Relate To ProctorU's
        Illinois Conduct..........................................................................................8

        C.    The Exercise Of Jurisdiction Over ProctorU Is Reasonable.....................11

    II.    PLAINTIFFS HAVE SUFFICIENTLY STATED CLAIMS UNDER BIPA.......13

        A.    ProctorU Violated BIPA §§ 15(a) And 15(b)............................................13

        B.    The Court Should Not Disregard Any Of Plaintiffs' Well-Pleaded
        Allegations ................................................................................................17

CONCLUSION...................................................................................................................19

## **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Aasonn, LLC v. Delaney*,
    961 N.E.2d 939 (Ill. App. Ct. 2011) ................................................................ 6

*Bishop v. Cecile Kemp, LPN*,
    2019 WL 5448544 (C.D. Ill. Mar. 5, 2019) ......................................... 3, 4, 15, 17

*Bray v. Lathem Time Co.*,
    2020 WL 1492742 (C.D. Ill. Mar. 27, 2020) .................................................... 9

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ........................................................................................ 7

*Cothron v. White Castle System, Inc.*,
    467 F. Supp. 3d 604 (N.D. Ill. 2020) .............................................................. 17

*Curry v. Revolution Labs., LLC*,
    949 F.3d 385 (7th Cir. 2020) ..................................................................... 6, 7, 9

*Erickson v. Nebraska Mach. Co.*,
    2015 WL 4089849 (N.D. Cal. July 6, 2015) .................................................... 16

*Flag Co. v. Maynard*,
    376 F. Supp. 2d 849 (N.D. Ill. 2005) ................................................... 11, 12, 13

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
    141 S. Ct. 1017 (2021) ............................................................................ passim

*Illinois v. Hemi Group LLC*,
    622 F.3d 754 (7th Cir. 2010) ........................................................................... 6

*Innovative Garage Door Co. v. High Ranking Domains, LLC*,
    981 N.E.2d 488 (Ill. App. Ct. 2012) ................................................................ 6

*McDonald's Corp. v. C.B. Management Co.*,
    13 F. Supp. 2d 705 (N.D. Ill. 1998) .............................................................. 15

*Mutnick v. Clearview AI, Inc.*,
    2020 WL 4676667 (N.D. Ill. Aug. 12, 2020) ......................................... 5, 7, 11

*Neals v. PAR Tech. Corp.*,
    419 F. Supp. 3d 1088 (N.D. Ill. 2019) ............................................................. 7

*Norberg v. Shutterfly, Inc.*,
    152 F. Supp. 3d 1103 (N.D. Ill. 2015) ........................................................ 5, 12

ii

*Price v. Schlee & Stillman, LLC*,
  2017 WL 2311229 (N.D. Ill. May 26, 2017) ........................................................... 4

*Quarles v. Pret A Manger (USA) Ltd.*,
  2021 WL 1614518 (N.D. Ill. Apr. 26, 2021) ......................................................... 14

*Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*,
  598 F. Supp. 2d 836 (N.D. Ill. 2009) ................................................................... 13

*Ratliff v. Don Hummer Trucking Corp.*,
  2018 WL 950092 (N.D. Ill. Feb. 20, 2018) ............................................................ 9

*Roberson v. Maestro Consulting Services LLC*,
  --- F. Supp. 3d ---, 2020 WL 7342693 (S.D. Ill. Dec. 14, 2020) ........................... 16

*Russell v. SNFA*,
  987 N.E.2d 778 (Ill. 2013) ................................................................................... 12

*Schorsch v. Hewlett-Packard Co.*,
  417 F.3d 748 (7th Cir. 2005) ................................................................................. 8

*Shrum v. Big Lots Stores, Inc.*,
  2014 WL 6888446 (C.D. Ill. Dec. 8, 2014) ............................................................ 4

*Stein v. Clarifai, Inc.*,
  2021 WL 1020997 (N.D. Ill. Mar. 16, 2021) .......................................................... 9

*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010) ....................................................................... 5, 6, 8

*Treadwell v. Power Solutions Int'l, Inc.*,
  427 F. Supp. 3d 984 (N.D. Ill. 2019) ................................................................... 17

*uBID, Inc. v. GoDaddy Group, Inc.*,
  623 F.3d 421 (7th Cir. 2010) .................................................................. 6, 8, 12, 13

*United States v. LaSalle Bank, N.A.*,
  2008 WL 4874169 (N.D. Ill. July 29, 2008) .......................................................... 18

*Walden v. Fiore*,
  571 U.S. 277 (2014) .............................................................................................. 9

*Zamora v. Lewis*,
  146 N.E.3d 231 (Ill. App. Ct. 2019) ...................................................................... 5

**STATUTES**

  740 ILCS 14/1 ..................................................................................................... 1

740 ILCS 14/10 ........................................................................................... 14

740 ILCS 14/15(a) ................................................................................... 2, 13

740 ILCS 14/15(b)(2) ............................................................................. 2, 14

740 ILCS 14/5(c) ......................................................................................... 1

Plaintiffs Rutvik Thakkar, William Gonigam, and Andrea Kohlenberg ("Plaintiffs") hereby submit this Opposition to Defendant ProctorU Inc.'s ("ProctorU" or "Defendant") Motion to Dismiss the First Amended Complaint (the "Motion" or "MTD") (ECF No. 21).

## <u>INTRODUCTION</u>

When the COVID-19 pandemic swept through the United States, educational institutions began to increasingly rely on online proctoring services to audit student exams. First Amended Complaint ("FAC"), ECF No. 18, at ¶ 34. Yet these online proctoring programs, such as Defendant's, brought with them a rash of privacy concerns. *Id*. Students have been videotaped urinating and breaking down in tears during exams by these proctoring companies. *Id*. ¶¶ 35-38. Defendant itself "has been in the crosshairs of this debate," as faculty associations have cautioned their institutions about the serious privacy implications that would result from the "widespread adoption of ProctorU." *Id*. ¶ 38.[1]

These concerns are well-taken, as companies like Defendant collect students' biometric identifiers and biometric information (collectively referred to as "biometrics"), such as students' facial geometry and keystroke biometrics. *Id*. ¶¶ 28-33. In enacting Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*., the Illinois Legislature found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id*. Accordingly, BIPA established a number

---

[1] ProctorU responded to these concerns by "threatening the faculty association with a lawsuit for defamation." FAC ¶ 38.

of safeguards that private entities like Defendant must undertake when collecting biometric information, including (i) establishing "a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information," and (ii) only collecting biometric information if the entity "informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used." 740 ILCS 14/15(a) ("BIPA § 15(a)"); 740 ILCS 14/15(b)(2) ("BIPA § 15(b)").

Despite contracting with numerous Illinois-based institutions for the provision of proctoring services, and despite collecting the biometrics of numerous Illinois-based students— including Plaintiffs—Defendant failed to abide by BIPA's requirements.  Defendant's "Privacy Policy simply states that 'We retain information for as long as necessary to perform the Services described in this Policy, as long as necessary for us to perform any contract with you or your institution, or as long as needed to comply with our legal obligations.'  The Privacy Policy does not have a section on the deletion of biometric information." FAC ¶ 39.  These general statements do not outline the "specific purpose and length of term for which a biometric identifier or biometric information is being collected," nor do they establish "a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information."  Accordingly, Plaintiffs allege ProctorU violated BIPA §§ 15(a) and 15(b) when it collected the biometrics of Plaintiffs and other Illinois residents.  FAC ¶¶ 41-42.

ProctorU's arguments in response are unpersuasive.  First, ProctorU argues this Court does not possess specific personal jurisdiction over it because it is an "Alabama company that remotely proctors exams over the internet." MTD at 1.  This argument is implausible in light of the fact that ProctorU contracted with at least **twenty-one (21)** Illinois-based institutions for the provision of

biometric-collecting proctoring services, and Plaintiffs' claims arise from or relate to these intentional contacts.  FAC ¶¶ 13-16.

Second, ProctorU argues that its CCPA Privacy Policy establishes the very retention and deletion schedules and "specific purpose and length of term" that Plaintiffs allege do not exist. MTD at 16.  But it is dubious that a document which, by its own terms, is "**California specific**" and applies only to "**California residents**" has any bearing on this action, which concerns only Illinois law and residents.  *See* Declaration of Dr. Ashley Norris In Support of Defendant's Motion to Dismiss the First Amended Complaint ("Norris Decl."), ECF No. 21-1, Ex. 2, at 4; Norris Decl. Ex. 3, at 2.  And even if the CCPA Privacy Policy did apply, it would not be an absolute bar to all of Plaintiffs' claims, as earlier versions of the CCPA Privacy Policy did not contain the language in question.  *See* Declaration of Max S. Roberts ("Roberts Decl."), Ex. 1, at 2.

Third, ProctorU asks the Court to disregard several of Plaintiffs' allegations as "bald conclusions of law."  MTD at 18.  But the Court may not do so at this stage when each of these allegations is well-supported by facts in the FAC.  *Bishop v. Cecile Kemp, LPN*, 2019 WL 5448544, at *4 (C.D. Ill. Mar. 5, 2019) (Bruce, J.) ("When considering a Rule 12(b)(6) motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in the plaintiff's favor.").

For the following reasons, Defendant's Motion should be denied in full.

## **LEGAL STANDARD**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint, *not* to decide the merits of the case."  *Bishop v. Cecile Kemp, LPN*, 2019 WL 5448544, at *4 (C.D. Ill. Mar. 5, 2019) (Bruce, J.) (emphasis in original).  "The complaint need only contain a short and plain statement of the claim showing that the pleader is entitled to relief."  *Id.* (internal quotations

omitted).  "When considering a Rule 12(b)(6) motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in the plaintiff's favor." *Id.*  "To survive a motion to dismiss, the complaint need only contain sufficient factual allegations to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted).

"A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure challenges whether it is consistent with due process for a court to assert personal jurisdiction over a defendant." *Shrum v. Big Lots Stores, Inc.*, 2014 WL 6888446, at *2 (C.D. Ill. Dec. 8, 2014) (Bruce, J.).  "A complaint does not need to include facts demonstrating personal jurisdiction; however, when a defendant challenges personal jurisdiction, the plaintiff bears the burden of proving that it exists." *Id.*  "Where, as here, a determination of jurisdiction is based on the submission of written materials instead of an evidentiary hearing, a plaintiff need only make out a prima facie case of personal jurisdiction." *Id.* (internal quotations omitted).  "In determining whether the plaintiff has satisfied this standard, a court must resolve all relevant factual disputes in the plaintiff's favor and read the complaint liberally, in its entirety, and with every inference drawn in favor of the plaintiff." *Id.* (internal quotations omitted).

## ARGUMENT

## I.   THE COURT POSSESSES SPECIFIC PERSONAL JURISDICTION OVER PROCTORU

"[S]pecific personal jurisdiction is appropriate where [] the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state." *Price v. Schlee & Stillman, LLC*, 2017 WL 2311229, at *2 (N.D. Ill. May 26, 2017).  Further, Plaintiffs' claims "must "arise out of or relate to [Defendant's] contacts with the forum." *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017,

1025 (2021) ("*Ford*").  The Court "also must consider whether it is reasonable to require the defendant to litigate in Illinois."  *Zamora v. Lewis*, 146 N.E.3d 231, 244 (Ill. App. Ct. 2019).  All three elements are satisfied here.

### A.    ProctorU Purposefully Directed Its Activities At Illinois

"[W]here, as here, the plaintiff's claims are for intentional torts, the inquiry focuses on whether the conduct underlying the claims was purposely directed at the forum state."  *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010).  To that end, *Mutnick v. Clearview AI, Inc.*, 2020 WL 4676667 (N.D. Ill. Aug. 12, 2020) is instructive.  In that case, the defendants built a facial recognition database using biometric information scraped from photos.  *Mutnick*, 2020 WL 4676667, at *1.  As to jurisdiction, the defendants:

> executed hundreds of agreements on behalf of Clearview with numerous Illinois law enforcement and other government agencies, as well as private entities in Illinois, to provide access to its facial recognition database. Through these agreements, defendants have sold, disclosed, obtained, and profited from the biometric identifiers of Illinois citizens. Some of the entities to whom Clearview sold biometric information include the Chicago, Rockford, and Naperville police departments. Also, Clearview marketed its licenses (user accounts) for its facial recognition database to the Illinois Secretary of State and negotiated a contract with the Secretary of State via a series of emails, mail, and phone calls.

*Id.*, at *2.  The Court held that such activities showed the defendants "purposefully directed their activities to the State of Illinois."  *Id.*; *see also Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1105 (N.D. Ill. 2015) (jurisdiction over company in BIPA suit where "Defendants offer their photo sharing and printing services to citizens of Illinois and ship their hard copy photographs and other products directly to their customers").

The Court should reach the same conclusion here.  ProctorU reached into Illinois and contracted with at least **twenty-one (21)** different Illinois-based institutions for the provision of proctoring services.  FAC ¶ 13.  ProctorU thus "sold" and "profited from" its contracts with

Illinois-based institutions for the provision of biometric-collecting proctoring software.  Likewise, each Plaintiff's injury was felt or suffered in Illinois, where their biometrics were collected by ProctorU.  *Id.* ¶¶ 18-20, 43, 51, 60.  Accordingly, ProctorU's "formed sufficient minimum contacts with Illinois."  *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 400 (7th Cir. 2020) ("Revolution's 767 sales of Diesel Test to Illinois residents provides solid evidence that Revolution has purposely exploited the Illinois market.  These sales certainly distinguish Revolution from the defendant that merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state.") (internal quotations and citations omitted); *see also uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 429 (7th Cir. 2010) ("*GoDaddy*") ("[A] typical business that operates on a national scale with GoDaddy's sales in Illinois, GoDaddy's customer base in Illinois, and GoDaddy's blanket of advertising in Illinois would unquestionably be subject to personal jurisdiction there for claims arising from its business activities that reach into the state."); *Tamburo*, 601 F.3d at 707 ("Here, the individual defendants purposely targeted Tamburo and his business in Illinois with the express goal of inflicting commercial and reputational harm on him there, even though their alleged defamatory and otherwise tortious statements were circulated more diffusely across the Internet."); *Illinois v. Hemi Group LLC¸* 622 F.3d 754, 756 (7th Cir. 2010) (jurisdiction over website that sold "three hundred packs of cigarettes" to Illinois resident); *Innovative Garage Door Co. v. High Ranking Domains, LLC*, 981 N.E.2d 488, 498 (Ill. App. Ct. 2012) (jurisdiction over lead generation company where "HRD's contacts with Illinois are in no way random, fortuitous, or attenuated; rather, they arise from substantial obligations in this state to which HRD voluntarily subjected itself by entering into a contract with an Illinois resident.") (internal citations and quotations omitted); *Aasonn, LLC v. Delaney*, 961 N.E.2d 939, 948 (Ill. App. Ct. 2011) (jurisdiction over non-resident consulting firm where "the contract was entered

into in Illinois" and "defendants could perform [] consulting work only by virtue of their relationship with Aasonn in Illinois"); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 487 (1985) (jurisdiction over franchisee where "Rudzewicz established a substantial and continuing relationship with Burger King's Miami headquarters" and "received fair notice from the contract documents and the course of dealing that he might be subject to suit in Florida").

ProctorU raises several meritless arguments to the contrary.  First, ProctorU argues that it "has no physical presence" in Illinois.  MTD at 8.  That is irrelevant.  *Curry*, 949 F.3d at 398 ("[P]hysical presence is not necessary for a defendant to have sufficient minimum contacts with a forum state."); *cf. Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1091 (N.D. Ill. 2019) ("PAR asserts that the complaint fails to allege that the relevant circumstances occurred primarily and substantially in Illinois, because PAR is a non-resident corporation that offers point-of-sale technology to its customers … and there is no allegation that PAR holds property in Illinois or stores data in Illinois.  The Court is unpersuaded.").

Second, ProctorU argues it "provides remote proctoring services nationwide."  MTD at 8. Likewise, ProctorU argues its contracts were "not Illinois-specific" (*i.e.*, it contracted with entities in multiple states for the provision of proctoring services).  MTD at 9.  But "it is not necessary that [Defendant] exclusively targeted only Illinois' residents and then marketed and sold its [proctoring services] only to Illinois entities."  *Mutnick*, 2020 WL 4676667, at *3.  What is sufficient for personal jurisdiction is that, like in *Mutnick*, ProctorU contracted with numerous Illinois-based institutions for the provision of proctoring services (FAC ¶ 13), and thereby obtained the biometrics of a number of Illinois residents, including Plaintiffs.

Finally, Defendant argues that it "has no control over the State in which any test-taker chooses to be when taking an exam.  Plaintiffs alone chose where to take an exam proctored by

7

ProctorU." MTD at 10. This ignores the allegation that ProctorU contracted with a significant number of Illinois-based institutions (FAC ¶ 13), and so deliberately and necessarily proctored at least some (if not a large number of) Illinois residents. *GoDaddy*, 623 F.3d at 428-29 ("GoDaddy is aware that it earns many millions of dollars annually from Illinois customers, and it cannot be unhappy to have had such success in the state. Its contacts cannot fairly be described as random, fortuitous, or attenuated."). And because ProctorU targeted Illinois institutions, it was foreseeable that its violations of BIPA would injure Illinois residents. *Tamburo*, 601 F.3d at 706 ("[A]lthough they acted from points outside the forum state, these defendants specifically aimed their tortious conduct at Tamburo and his business in Illinois with the knowledge that he lived, worked, and would suffer the 'brunt of the injury' there.").[2]

### B. Plaintiffs' Claims Arise Out Of Or Relate To ProctorU's Illinois Conduct

For conduct to "arise out of" or "relate to" a defendant's contacts with the forum, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Ford*, 141 S. Ct. at 1025 (internal quotations omitted). The Supreme Court has "never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Id.* at 1026.

Here, as noted above, ProctorU contracted with at least twenty-one Illinois-based institutions, including the University of Illinois at Urbana-Champaign. FAC ¶ 13. "Plaintiff

---

[2] ProctorU also complains that "Plaintiffs' definitions of the proposed classes do not specify where the would-be class members took exams." MTD at 10; *see also* MTD at 13 ("In fact, Plaintiffs do not even define their proposed class and sub-classes based on **where** test-takers took exams.") (emphasis in original). But no class has been certified, and so Plaintiffs' class definitions are not final. *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) ("Litigants and judges regularly modify class definitions.").

Gonigam used ProctorU to take online exams at the University of Illinois at Urbana-Champaign online from at least June 2019 through at least August 2020." *Id.* ¶ 51. During each of these exams, in violation of BIPA, ProctorU collected his "facial geometry" in Illinois without the proper retention and deletion schedules and without adequate notice and consent. *Id.* ¶¶ 53-57. Plaintiff Gonigam's claims thus unquestionably arise from or relate to ProctorU's Illinois-based connections.[3] *See Curry*, 949 F.3d at 401 ("Revolution's sales [in Illinois] are inextricably linked to the alleged tortious activity underlying Mr. Curry's claims."); *Ford*, 141 S. Ct. at 1027 ("Or said another way, if Audi and Volkswagen's business deliberately extended into Oklahoma (among other States), then Oklahoma's courts could hold the companies accountable for a car's catching fire there—even though the vehicle had been designed and made overseas and sold in New York.") (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).[4]

Similarly, Plaintiff Thakkar and Plaintiff Kohlenberg's claims relate to ProctorU's myriad Illinois contacts. To that end, *Ford* is instructive. In *Ford*, the Supreme Court considered whether Montana and Minnesota would have jurisdiction over Ford where defective cars broke down in

---

[3] ProctorU argues that its "relationship with UIUC is not 'suited-related.'" MTD at 13. But it is. ProctorU contracted with UIUC and other Illinois universities for the provision of proctoring services, which included the collection of biometrics from their students. FAC ¶ 13. And, because of this contract, Plaintiff Gonigam was forced to use ProctorU for his exams at UIUC, and to have his biometrics collected by ProctorU. *Id.* ¶ 59. *Stein v. Clarifai, Inc.*, 2021 WL 1020997, at *4 (N.D. Ill. Mar. 16, 2021) is distinguishable because Clarifai made a "miniscule number of transactions" in Illinois. And in *Bray v. Lathem Time Co.*, 2020 WL 1492742, at *3 (C.D. Ill. Mar. 27, 2020), the biometric timekeeping device was sold to an Arkansas company, and was fortuitously sent to the company's Illinois branch.

[4] *Ratliff v. Don Hummer Trucking Corp.*, 2018 WL 950092 (N.D. Ill. Feb. 20, 2018) is inapposite. The defendant in *Ratliff* maintained one parking lot in Illinois, and "Plaintiff fail[ed] to demonstrate that his claim that he did not receive the post-rejection notification required by the FCRA is related to Defendant's transportation services in Illinois." *Ratliff*, 2018 WL 950092, at *3. By contrast, ProctorU has contracted with nearly two dozen schools in Illinois (if not more) for the provision of proctoring services where biometrics are collected, and Plaintiffs' claims directly arise out of or relate to those contacts. *Walden v. Fiore*, 571 U.S. 277 (2014) is also distinguishable because, unlike ProctorU here, "in *Walden*, only the plaintiffs had any contacts with the State of Nevada; the defendant-officer had never taken any act to form a contact of his own." *Ford*, 141 S. Ct. at 1031 (internal quotations omitted).

Montana and Minnesota, but were designed in Michigan, manufactured in Kentucky, and sold in Washington and North Dakota. *Ford*, 141 S. Ct. at 1023. The Supreme Court ruled Montana and Minnesota possessed jurisdiction over Ford because Ford's in-state conduct related to the plaintiff's claims, even if the claim itself stemmed from out-of-state conduct:

> To see why Ford is subject to jurisdiction in these cases … consider first the business that the company regularly conducts in Montana and Minnesota … By every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail—Ford urges Montanans and Minnesotans to buy its vehicles, including (at all relevant times) Explorers and Crown Victorias. Ford cars—again including those two models—are available for sale, whether new or used, throughout the States, at 36 dealerships in Montana and 84 in Minnesota. And apart from sales, Ford works hard to foster ongoing connections to its cars' owners. The company's dealers in Montana and Minnesota (as elsewhere) regularly maintain and repair Ford cars, including those whose warranties have long since expired. And the company distributes replacement parts both to its own dealers and to independent auto shops in the two States. Those activities, too, make Ford money. And by making it easier to own a Ford, they encourage Montanans and Minnesotans to become lifelong Ford drivers.
>
> Now turn to how all this Montana- and Minnesota-based conduct relates to the claims in these cases, brought by state residents in Montana's and Minnesota's courts. Each plaintiff's suit, of course, arises from a car accident in one of those States. In each complaint, the resident-plaintiff alleges that a defective Ford vehicle—an Explorer in one, a Crown Victoria in the other—caused the crash and resulting harm. And as just described, Ford had advertised, sold, and serviced those two car models in both States for many years … **In other words, Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States**. So there is a strong relationship among the defendant, the forum, and the litigation—the essential foundation of specific jurisdiction.

*Id.* at 1028 (internal citations and quotations omitted, emphasis added); *see also id.* at 1026 ("A different State's courts may yet have jurisdiction, because of another activity or occurrence involving the defendant that takes place in the State. And indeed, this Court has stated that specific jurisdiction attaches in cases identical to the ones here—when a company like Ford serves a market for a product in the forum State and the product malfunctions there.") (internal quotations omitted).

10

*Ford*'s reasoning applies here.[5]  There is no doubt that Plaintiffs Thakkar and Kohlenberg were injured in Illinois, where they took their exams and where their biometrics were improperly collected.  FAC ¶¶ 43-48, 60-67.  But it is also true that, even though Plaintiff Thakkar and Kohlenberg took exams organized by non-Illinois entities, their injuries relate to ProctorU's significant Illinois conduct.  The same course of conduct that injured Plaintiffs Thakkar and Kohlenberg—the contracting with schools for proctoring services that improperly collected biometrics—also took place in Illinois, where ProctorU contracts with a significant number of Illinois universities and other testing institutions.  *Id.* ¶ 13.  Thus, Plaintiff Thakkar and Kohlenberg's claims also "relate to" ProctorU's Illinois-based conduct.

In short, "resident-[P]laintiffs allege that they suffered in-state injury because of [] [services] that [ProctorU] extensively promoted, sold, and serviced in [Illinois] … [T]he connection between the [P]laintiffs' claims and [ProctorU's] activities in [Illinois]—or otherwise said, the 'relationship among the defendant, the forum[s], and the litigation'—is close enough to support specific jurisdiction."  *See Ford*, 141 S. Ct. at 1032.

## C.    The Exercise Of Jurisdiction Over ProctorU Is Reasonable

"The exercise of jurisdiction must comport with notions of fair play and substantial justice*.*  *Flag Co. v. Maynard*, 376 F. Supp. 2d 849, 856 (N.D. Ill. 2005).  "This determination includes: the burden on the defendant to litigate in the forum, the state's interest in settling the

---

[5] ProctorU tries to distinguish *Ford* on the grounds that the Supreme Court "was not considering 'internet transactions.'"  MTD at 13 n.6 (citing *Ford*, 141 S. Ct. 1028 n.4).  That is meritless.  The contacts here are not the selling of software over the web, but a major corporation contracting with twenty-one Illinois-based institutions for the provision of biometric-collecting proctoring services.  *Mutnick*, 2020 WL 4676667, at *2.  In any event, there is no reason the holding of *Ford* cannot be applied to the events that transpired here.  Further, the specific hypothetical put before the *Ford* court was whether specific jurisdiction would exist over "[a] retired guy in a small town in Maine [who] carves decoys and uses a site on the Internet to sell them."  *Ford*, 141 S. Ct. at 1028 n.4 (internal quotations omitted).  This is a far cry from the facts of this case, where ProctorU, like Ford, is a "global [] company" that "extensively markets" in Illinois, and contracts with numerous Illinois-based entities.  *Id.* at 1022, 1030.

dispute, the plaintiff's interest in obtaining convenient and effective relief, the plaintiff's burden to litigate elsewhere, and the interstate judicial system's interest in efficient resolution of disputes." *Id*.

For the reasons outlined above, the exercise of jurisdiction over ProctorU is reasonable. "In conducting so much business in [Illinois], [ProctorU] enjoys the benefits and protection of [Illinois] laws—the enforcement of contracts, the defense of property, the resulting formation of effective markets.  All that assistance to [ProctorU's] in-state business creates reciprocal obligations." *Ford*, 141 S. Ct. at 1029-30 (internal citations and quotations omitted); *see also Russell v. SNFA*, 987 N.E.2d 778, 798 (Ill. 2013) ("[W]e are not dealing with the single isolated sale by the foreign defendant … [T]he record demonstrates that multiple sales of defendant's products were made in Illinois over the past 10 years, including business between defendant and the Rockford, Illinois, location of Hamilton Sundstrand.").  Such contacts provide "clear notice" to ProctorU that it may be haled in Illinois courts.  *Ford*, 141 S. Ct. at 1030 ("An automaker regularly marketing a vehicle in a State, the Court said, has 'clear notice' that it will be subject to jurisdiction in the State's courts when the product malfunctions there (regardless where it was first sold).

Further, Defendant is "accused of violating … an Illinois statute and [Plaintiffs' injuries] stem[] out of [Defendant's] contact with Illinois residents."  *Norberg*, 152 F. Supp. 3d at 1105.  And Plaintiffs are all Illinois residents.  Thus, "there is a strong interest in adjudicating the matter locally" in Illinois.  *Id*.; *see also GoDaddy*, 623 F.3d at 432 ("We must also be mindful of Illinois's

significant interest in providing a forum for its residents to seek relief when they suffer harm in Illinois from a wrong that occurred at least in part in Illinois.").[6]

Moreover, "the burden of defending a lawsuit in Illinois is minimal for [ProctorU], a corporation with a broad enough reach to operate and market its services on a national scale." *GoDaddy*, 623 F.3d at 432; *see also Flag Co.*, 376 F. Supp. 2d at 856 ("The burden on the Canadian defendants to travel to the United States is not so large as to outweigh Flag's interest."). On top of this, "[i]n this day and age, transferring documents from one district to another is commonplace and, given the widespread use of digital imaging in big-case litigation, no more costly than transferring them across town." *Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 840 (N.D. Ill. 2009).

Thus, in light of ProctorU's significant contacts with Illinois institutions, the minimal burden on Defendant, and Illinois' strong interest in adjudicating controversaries affecting residents and arising from local laws, it is reasonable for ProctorU to be haled into this forum.

## II.   PLAINTIFFS HAVE SUFFICIENTLY STATED CLAIMS UNDER BIPA

### A.   ProctorU Violated BIPA §§ 15(a) And 15(b)

ProctorU argues that "[e]ven if this Court did have personal jurisdiction over ProctorU, Plaintiffs fail to state a valid claim" under BIPA §§ 15(a) and 15(b). MTD at 15. That is wrong.

BIPA § 15(a) requires ProctorU to maintain "a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information." 740 ILCS 14/15(a). Likewise, BIPA § 15(b) prohibits ProctorU from "collect[ing], captur[ing] … or otherwise obtain[ing] a person's or a customer's biometric

---

[6] ProctorU's forum selection clause is of no import. Even if it is valid (and it is not for the reasons outlined in Plaintiffs' Opposition to the Motion to Transfer), it "has nothing to do with the jurisdictional expectations the company has fostered." *GoDaddy*, 623 F.3d at 429 n.2.

identifier or biometric information, unless it first … informs the subject …in writing of the **specific purpose and length of term** for which a biometric identifier or biometric information is being collected, stored, and used."  740 ILCS 14/15(b)(2) (emphasis added).

As alleged in the FAC, ProctorU violated both of these provisions.  Plaintiffs have alleged—and ProctorU does not dispute—that when proctoring online exams, ProctorU collects students' biometrics, including their facial geometry, eye movement, and keystroke pattern.[7]  FAC ¶¶ 28-33.  However, ProctorU's Privacy Policy does disclose how long ProctorU will retain this biometrics.  *Id.* ¶ 39.  "Rather, ProctorU's Privacy Policy simply states that 'We retain information for as long as necessary to perform the Services described in this Policy, as long as necessary for us to perform any contract with you or your institution, or as long as needed to comply with our legal obligations.'"  *Id.*; *see also* Norris Decl., Ex. 2, at 4.  This vague and unspecific policy is insufficient to comply with the requirements of BIPA §§ 15(a) and 15(b)(2) because it does not establish a "retention schedule and guidelines for permanently destroying biometric identifies," and it does not inform Plaintiffs of the "specific purpose or length of term" for which their biometrics will be retained.  *See Quarles v. Pret A Manger (USA) Ltd.*, 2021 WL 1614518, at *5 (N.D. Ill. Apr. 26, 2021) (violation of § 15(b) alleged where plaintiff "never received written information about Pret's collection, storage, and use practices"); *id.* (violation of § 15(a) alleged where "Pret did not have written, publicly available policies identifying its retention schedules or

---

[7] Defendant argues that keystroke dynamics are not "biometric identifiers."  MTD at 15-16 n.8.  This is wrong.  Keystroke dynamics are properly understood as a form of scanning "hand geometry," which is a "biometric identifier" under BIPA.  740 ILCS 14/10.  Even Defendant's Privacy Policy defines keystroke dynamics as biometrics.  Norris Decl. Ex. 2, at 2 ("We also require you to perform a **biometric** keystroke measurement for some exams.") (emphasis added); Roberts Decl. Ex. 1 ("Biometric information including … activity patterns unique to you including identifying information, such as … keystroke.").

guidelines for permanently destroying biometric identifiers and/or biometric information")
(internal quotations omitted).

ProctorU tacitly admits that its Privacy Policy, at best, "provides **general** information about
its data-handling practices and its data-retention schedule," which violate the aforementioned
provisions of BIPA.  MTD at 16 (emphasis added).  Instead, ProctorU primarily relies on its CCPA
Privacy Policy, which contains more detailed guidelines.  Norris Decl. Ex. 3.  However, ProctorU
neglects to mention that the CCPA Privacy Policy is specific to California residents.  Norris Decl.
Ex. 2, at 4 ("**California residents** may view the **California specific** privacy policies.") (emphasis
added); *id.* (text under heading "Your **California** Privacy Rights") (emphasis added); Norris Decl.
Ex. 3, at 2 ("[W]e describe the categories of personal information we have collected from
**California consumers**") (emphasis added).[8]  There is nothing to suggest that the terms of the
CCPA Privacy Policy also apply to Plaintiffs—residents of Illinois—or residents of any state other
than California.  *Cf. McDonald's Corp. v. C.B. Management Co.*, 13 F. Supp. 2d 705, 714 (N.D.
Ill. 1998) ("[W]here a contractual choice-of-law provision refers the parties to a state law … which
by its express terms does not apply to them, we think it is only by a strained analysis of the
principles of choice-of-law that the law is nonetheless found to apply.").  Nor may the Court make
an inference otherwise against Plaintiffs.  *Bishop*, 2019 WL 5448544, at *4 ("When considering a
Rule 12(b)(6) motion to dismiss, the court construes the complaint in the light most favorable to
the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences
in the plaintiff's favor.").

---

[8] Indeed, no Plaintiff was asked whether they agreed to the CCPA Privacy Policy.  Declaration of
Dr. Ashley Norris In Support of Defendant's Renewed Motion to Transfer, ECF No. 23-1, at
Exs. 4, 6.  They were only asked whether they agreed to the standard Privacy Policy.

Further, even if the CCPA Privacy Policy applied to Plaintiffs' claims—and it does not—it would not be dispositive. Plaintiff Gonigam alleges he "used ProctorU to take online exams at the University of Illinois at Urbana-Champaign online from at least June 2019 through at least August 2020." FAC ¶ 51. But in March 2020 (if not earlier), the portion of the CCPA Privacy Policy concerning biometrics read as follows:

| Categories of Personal Information Collected | Sources of Collection | Business/Commercial Purpose for Collection | Categories of Third Parties Receiving Personal Information |
|---|---|---|---|
| Biometric information including genetic, physiological, behavioral, and biological characteristics, or activity patterns unique to you including identifying information, such as, fingerprints, faceprints, voiceprints, iris or retina scans, or keystroke. | You | To ensure testing integrity | Proctors<br><br>Testing institutions |

Roberts Decl. Ex. 1., at 2.[9]  This says nothing about a retention and deletion schedule for biometrics, nor does it say anything about the "length of term" for which biometrics will be retained. And it does not matter that the CCPA Privacy Policy was updated in July 2020 to include more information (Norris Decl. Ex. 3), because BIPA must be complied with **before** collecting a person's biometrics. *See*, *e.g.*, *Roberson v. Maestro Consulting Services LLC*, --- F. Supp. 3d ---, 2020 WL 7342693, at *12 (S.D. Ill. Dec. 14, 2020) ("The Consenting Plaintiffs' section 15(b) claims are not rendered false by the signed BIPA Consent Forms. While the BIPA Consent Forms

---

[9] The March 2020 version of the CCPA Privacy Policy was the earliest available version of the CCPA Privacy Policy on the Wayback Machine. In any event, this version of the CCPA Privacy Policy is incorporated by reference in Plaintiffs' FAC ¶¶ 51-59 and is properly subject to judicial notice. *See*, *e.g.*, *Erickson v. Nebraska Mach. Co.*, 2015 WL 4089849, at *1 (N.D. Cal. July 6, 2015) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned … and the Court does so here.") (internal citations omitted).

are dated, Defendants have not shown that Plaintiffs were informed and consented before their biometric information was collected."); *Cothron v. White Castle System, Inc.*, 467 F. Supp. 3d 604, 617 (N.D. Ill. 2020) ("Colloquially, however, consent implies permission given in advance and that understanding would seem to apply here given the difficulty of 'un-disclosing' biometric information—a dynamic that motivated BIPA's enactment."); *Treadwell v. Power Solutions Int'l, Inc.*, 427 F. Supp. 3d 984, 987 (N.D. Ill. 2019) ("BIPA mandates that **before** obtaining an individual's fingerprint, a private entity must inform the individual in writing about several things.") (emphasis added).

Accordingly, even if the CCPA Privacy Policy applied to non-California residents, Plaintiff Gonigam would still have valid BIPA claims from at least March 2020 through June 2020. But because the CCPA Privacy Policy is California-specific, all Plaintiffs may maintain their BIPA claims for all time periods, as Defendant's Privacy Policy does not comply with BIPA §§ 15(a) and 15(b).

**B.    The Court Should Not Disregard Any Of Plaintiffs' Well-Pleaded Allegations**

ProctorU spends considerable briefing claiming that some of Plaintiffs' allegations are "conclusory" and should be "disregard[ed]." MTD at 18-19 (citing FAC ¶¶ 6, 82-83, 88, 92-93, 97). It is not clear whether ProctorU seeks to strike these allegations or simply asks the Court to decline to accept them as true. But this would go against the standard on a motion to dismiss, in which the Court must "accept[] all well-pleaded allegations as true and constru[e] all reasonable inferences in the plaintiff's favor." *Bishop*, 2019 WL 5448544, at *4. And these allegations are well supported by the allegations in the FAC:

- At FAC ¶¶ 82 and 92, Plaintiffs assert that ProctorU "failed to comply with [] BIPA's mandates." These allegations are supported at length in the FAC, including

with allegations about the substance of ProctorU's Privacy Policy and its lack of a "retention schedule and guidelines for permanently destroying biometric identifies," and lack of a "specific purpose or length of term" for which the biometric information will be retained.  *See* FAC ¶¶ 39-67.

- At FAC ¶ 6, Plaintiffs allege that ProctorU's Privacy Policy is not "sufficiently specific" in violation of BIPA §§ 15(a) and 15(b).  This is so because ProctorU's Privacy Policy does not state the purpose for which biometric information is retained, and states "**no time limit** on how long [ProctorU] retains biometrics." FAC ¶ 39 (emphasis in original); *see also* Norris Decl. Ex. 2 at 4.

- At FAC ¶ 88, Plaintiffs assert that because "Defendant lacked retention schedules and guidelines for permanently destroying Plaintiffs' and the Classes' biometric data … the only reasonable conclusion is that Defendant has not, and will not, destroy Plaintiffs' and the Classes' biometric data."  But ProctorU has no schedule for deleting biometric information.  FAC ¶ 39.  Thus, it is reasonable to assume that it does not delete biometrics.  If ProctorU disputes this, then that is a question of fact not ripe for resolution on a motion to dismiss.  *United States v. LaSalle Bank, N.A.*, 2008 WL 4874169, at *2 (N.D. Ill. July 29, 2008) ("Courts … should not attempt to resolve factual disputes on a motion to dismiss.").

- At FAC ¶ 97, Plaintiffs allege Defendant collected biometrics "without first obtaining the written release required by 740 ILCS 14/15(b)(3)."  But as noted above, Plaintiffs have alleged that ProctorU's Privacy Policy was not in compliance with BIPA § 15(b).  Thus, ProctorU did not obtain the proper "written release."

Accordingly, at this stage of the litigation, the Court should accept all of Plaintiffs' well-pled allegations as true.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

Dated: July 7, 2021

Respectfully submitted,

*/s/ Max S. Roberts*
Max S. Roberts

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
E-mail: malmstrom@whafh.com

*Local Counsel for Plaintiffs
and the Putative Classes*

**BURSOR & FISHER, P.A.**
Alec M. Leslie
Max S. Roberts
888 Seventh Avenue, Third Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-mail: aleslie@bursor.com
           mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly*
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 679-9006
E-mail: creilly@bursor.com

*\*Application for Admission Forthcoming*

*Attorneys for Plaintiffs
and the Putative Classes*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this memorandum in opposition complies with Local Rule 7.1(B)(4)(b)(1).

According to the word-count feature in Microsoft Word, this memorandum contains 6,089 words

and 33,618 characters (excluding spaces) or 39,848 characters (including spaces).

*/s/ Max S. Roberts*
Max S. Roberts

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 7, 2021, I e-filed the foregoing document with the Clerk of Court

using the CM/ECF system, which will send notification of such filing to the following counsel of

record:

Thomas J. Butler
Michal Crowder
Caleb C. Wolanek
**MAYNARD COOPER & GALE, P.C.**
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
T: (205) 254-1000
F: (205) 254-1999
tbutler@maynardcooper.com
mcrowder@maynardcooper.com
cwolanek@maynardcooper.com

Megan M. New
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
T: (312) 862-2000
F: (312) 862-2200
megan.new@kirkland.com

*/s/ Max S. Roberts*
Max S. Roberts