E-FILED
Tuesday, 23 November, 2021  04:03:47 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| RUTVIK THAKKAR, WILLIAM GONIGAM, and ANDREA KOHLENBERG, individually and on behalf of all others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>PROCTORU INC., )<br><br>Defendant. ) | Case No. 21-CV-2051 |

## O R D E R

On March 12, 2021, Plaintiffs, Rutvik Thakkar, William Gonigam, and Andrea Kohlenberg, filed the instant suit, alleging violations of the Illinois Biometric Information Privacy Act ("BIPA") by Defendant, ProctorU, Inc.  Plaintiffs filed an Amended Complaint (#18) on May 20, 2021.  Defendant filed a Motion to Dismiss (#21) on June 3, 2021, and a Motion to Transfer Venue (#23) on June 7, 2021.  On July 7, 2021, Plaintiffs filed Memorandums in Opposition (#29, 30) to both Motions, and on July 28, 2021, Defendant filed Unopposed Motions for Leave to File Reply Memorandums (#31, 32) in support of both its Motions.  Plaintiffs have also filed Notices of Supplemental Authority (#34, 35) regarding the Motion to Dismiss.

For the following reasons, Defendant's Motion to Transfer Venue (#23) is GRANTED, and ruling on the Motion to Dismiss (#21) is reserved pending transfer.

## I.  BACKGROUND

The following background facts are taken from the allegations in the Amended Complaint (#18) and from the parties' briefs on the issue of venue.

Defendant ProctorU is a Delaware corporation with its principal place of business in Birmingham, Alabama.  Defendant develops, owns, and operates an online test proctoring software, through which it provides remote proctoring services for test administrators in at least 45 states.  Because its proctoring services are online, test-takers can access and use ProctorU's system from anywhere in the United States or internationally.

Plaintiffs are students, domiciled in Illinois, who used ProctorU.  Specifically, Plaintiff Thakkar used ProctorU to take his Test of English as a Foreign Language ("TOEFL") online in January 2021.  Thakkar had contracted with the Educational Testing Service ("ETS") to take the TOEFL, and ETS did not provide him with a choice as to what proctoring service he could use.  Further, Thakkar was not made aware of any terms that would allow him to recoup his payment for the TOEFL if he did not consent to using ProctorU's services.

Plaintiff Gonigam used ProctorU to take online exams at the University of Illinois at Urbana-Champaign ("UIUC") from approximately June 2019 through August 2020.  He also used ProctorU to take the Graduate Record Examination ("GRE") online in January 2021.  Gonigam had contracted with UIUC to take classes and with ETS to take the GRE.  Neither UIUC nor ETS offered Gonigam a choice as to what proctoring service he could use, nor was he made aware of any terms that would allow him to

recoup any tuition payments or exam fees if he declined to consent to ProctorU's proctoring services.

Plaintiff Kohlenberg used ProctorU to take the Law School Admission Test ("LSAT") online in November 2020.  She had contracted with the Law School Admissions Counsel ("LSAC") to take the LSAT.  LSAC did not provide her with a choice as to what proctoring service she could use, and she was not made aware of any terms that would allow her to recoup any payment if she declined to consent to ProctorU's proctoring services.

Before taking any online exam proctored by ProctorU, test-takers must affirmatively consent to ProctorU's Terms of Service.  First, a test-taker must create a ProctorU account, which requires the test-taker to agree to ProctorU's Terms of Service. In addition, before the commencement of a specific exam, the test-taker is presented with a prompt entitled "Exam Rules" that includes hyperlinks to ProctorU's Privacy Policy and Terms of Service.  Before continuing to the exam, the test-taker must affirmatively check the box next to the statement: "I agree to the terms set forth in ProctorU's Privacy Policy and Terms of Service."

According to the record, Plaintiff Thakkar created a ProctorU account on December 28, 2017, first took a ProctorU-proctored exam on January 1, 2018, and again checked the box accepting ProctorU's Terms of Service on January 11, 2021, in advance of taking the TOEFL.  Gonigam created a ProctorU account on December 28, 2017, first took an exam proctored by ProctorU on January 2, 2018, and again accepted the Terms of Service on January 21, 2021, in advance of taking the GRE.  Kohlenberg created a

3

ProctorU account on April 30, 2020, in order to complete an exam for an undergraduate

class at Wheaton College, and she again accepted the Terms of Service on November 10,

2020, in advance of taking the LSAT.

At the time that Plaintiffs accepted ProctorU's Terms of Service in November

2020 through January 2021, the Terms consisted of a 4.5 page document that included

18 separate provisions each with a bolded heading.  Paragraph 15, which consisted of

two sentences following the bolded heading "Controlling Law and Jurisdiction,"

included a forum-selection clause: "All claims, legal proceedings, or litigation arising

out of or in connection with or related to the Services will be brought solely in a court of

competent jurisdiction in the State of Alabama, County of Jefferson."

During Plaintiffs' use of ProctorU, Defendant collected their biometrics,

including eye movements, facial expressions and/or face geometry, and keystroke

biometrics.

In relevant part, Illinois' BIPA provides:

(a) A private entity in possession of biometric identifiers or biometric
information must develop a written policy, made available to the public,
establishing a retention schedule and guidelines for permanently destroying
biometric identifiers and biometric information when the initial purpose for
collecting or obtaining such identifiers or information has been satisfied or
within 3 years of the individual's last interaction with the private entity,
whichever occurs first.…

(b) No private entity may collect, capture, purchase, receive through trade, or
otherwise obtain a person's or a customer's biometric identifier or biometric
information, unless it first:

(1) informs the subject or the subject's legally authorized representative in
writing that a biometric identifier or biometric information is being collected
or stored;

4

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 Ill. Comp. Stat. 14/15.

Defendant never informed Plaintiffs, nor other Illinois test-takers,[1] of the length of time that their biometric information would be collected, stored, or used; did not have written, publicly available policies identifying its retention schedules or guidelines; failed to receive informed written consent from Plaintiffs for the collection and retention of their biometric information; and has in fact continued to retain biometrics beyond the intended purpose for collection.

## II.  ANALYSIS

Defendant moves to transfer the instant case, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Northern District of Alabama.  In support of transfer, Defendant argues that Plaintiffs agreed to the Terms of Service, including a valid forum-selection clause that applies to their claims in this case and must be enforced under § 1404(a).  Plaintiffs argue that the forum-selection clause is invalid because the Terms of Service are procedurally unconscionable and the clause itself is

---

[1] Plaintiffs also seek to represent a class of all Illinois residents who used ProctorU to take an exam online and who had their facial geometry collected, captured, received, or otherwise obtained and/or stored by Defendant.

unreasonable, and that Defendant's motion should be denied because the private and public interest factors under § 1404(a) weigh against transfer.

Ordinarily, a court considering a § 1404(a) motion to transfer must evaluate and weigh both private and public interest factors to determine if transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." *Atlantic Marine Construction Co., Inc. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49, 62-63 (2013), quoting 28 U.S.C. § 1404(a).

Under this analysis, private interest factors include (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience to the witnesses. *Research Automation, Inc. v. Schrader-Bridgeport International, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Public interest factors include (1) docket congestion and likely speed to trial in the transferor and potential transferee forums; (2) each court's relative familiarity with the relevant law; (3) the respective desirability of resolving controversies in each locale; and (4) the relationship of each community to the controversy. *Research Automation*, 626 F.3d at 978.

However, when there is a valid forum-selection clause, the plaintiff's choice of forum "merits no weight" and the court should not consider arguments about the parties' private interests, which the court "must deem … to weigh entirely in favor of the preselected forum." *Atlantic Marine*, 571 U.S. at 63-64.  Therefore, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.  Only under extraordinary

6

circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atlantic Marine*, 571 U.S. at 62.

In the instant case, therefore, the court must first determine whether the forum-selection clause contained in the Terms of Service is valid before determining which § 1404(a) factors to consider and what weight those factors warrant.

A. <u>Validity of the Forum-Selection Clause</u>

As a preliminary matter, Plaintiffs appear to suggest that no contract was formed between the parties whatsoever, as they allege that "[a]t no point during the test[s], nor during enrollment, did Plaintiff[s] provide consideration to or confer a benefit onto Defendant." Amended Complaint (#18), at ¶¶ 49, 58, 66. However, Defendant is correct that "consideration is relatively easy to show." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 532 (7th Cir. 1996). Here, Plaintiffs agreed to the Terms of Service, which benefitted Defendant, and in exchange Defendant provided Plaintiffs with access to their online proctoring services. See *Kirgan v. FCA, LLC*, 838 F.Supp.2d 793, 798 (C.D. Ill. 2012) ("Any act or promise which is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract." (cleaned up)); *TopStepTrader, LLC v. OneUp Trader, LLC*, 2018 WL 1859040, at *2 (N.D. Ill. Apr. 18, 2018) ("The consideration exchanged was access to the website.").

Plaintiffs do not dispute that the claims brought within this suit fall within the plain terms of the forum-selection clause contained in Paragraph 15 of the Terms of Service, which applies to "[a]ll claims, legal proceedings, or litigation arising out of or in connection with or related to the Services[.]"

7

Therefore, the issue is whether the forum-selection clause is valid.  Plaintiffs argue that the Terms of Service in general are procedurally unconscionable, and that the forum-selection clause specifically is invalid because it is the result of Defendant's overweening bargaining power, the selected forum would be inconvenient for Plaintiffs, and enforcement of the clause would contravene the strong public policy of Illinois.

1. *Procedural Unconscionability of the Terms of Service Under Illinois Law*

Under Illinois law,[2] a contract may be held unenforceable due to either procedural or substantive unconscionability, or a combination of both. See *Razor v. Hyundai Motor America*, 854 N.E.2d 607, 622 (Ill. 2006).  In the instant matter, Plaintiffs argue only that the arbitration clause is procedurally unconscionable.

"Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power."  *Razor*, 854 N.E.2d at 622.

Here, Plaintiffs argue that their agreement to the Terms of Service was procedurally unconscionable due to their lack of bargaining power and the fact that they were "depriv[ed] … of a meaningful choice."  *Kinkel v. Cingular Wireless LLC*, 857

---

[2] Although Paragraph 15 of the Terms of Service also contains a choice-of-law provision providing that Alabama law governs the Terms and all claims brought thereunder, Defendant concedes that there is no need to resolve the choice-of-law issue now, and both Defendant and Plaintiffs' arguments regarding procedural unconscionability are supported with citations to Illinois law.

N.E.2d 250, 264 (Ill. 2006), quoting *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 410 (Ill. App. Ct. 1980).  Specifically, Plaintiffs argue that they contracted with and paid test administrators (*i.e.*, ETS, LSAC, UIUC) to take exams without being informed that the exams would be proctored by Defendant or being given any choice as to what proctoring service they could use.  The test administrators did not provide Plaintiffs with Defendant's Terms of Service in advance of their enrolling and paying for exams, nor did administrators make clear whether Plaintiffs would be entitled to refunds if they later declined to accept Defendant's Terms of Service.

Plaintiffs argue that Defendant did not view them as co-equal bargainers because Paragraph 2 of the Terms of Service states that "[t]he Services are being provided to you by ProctorU for the benefit of your college, university, instructor, school, organization, certification administrator, or other test delivery partner[.]"  And Plaintiffs further argue that they did not have a meaningful choice regarding whether to accept or decline Defendant's Terms of Service because ProctorU was the only test proctoring service available to them and they otherwise would not have been able to take their exams on their selected test dates, which would have "drastically impacted … [their] future employment and educational prospects."  Amended Complaint (#18), at ¶¶ 50, 59, 67.

First, the court notes as a general matter that the method by which Plaintiffs accepted the Terms of Service, as described in the Background section above, constitutes a "clickwrap" agreement, and such agreements are regularly upheld and

enforced. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033 (7th Cir. 2016); *TopStepTrader*, 2018 WL 1859040, at *3 (collecting cases). Plaintiffs do not argue that the "clickwrap" structure of the agreement rendered the Terms procedurally unconscionable as difficult to find, read, or understand.

Rather, the specific concerns raised by Plaintiffs relate to the features of the agreement akin to a contract of adhesion, *i.e.* a "take-it-or-leave it" contract with nonnegotiable terms, in which a party may not have meaningful alternative choices. See *Kinkel*, 857 N.E.2d at 266 (describing a contract in which the terms are "nonnegotiable and presented in fine print in language that the average consumer might not fully understand"); *Williams v. Jo-Carroll Energy, Inc.*, 890 N.E.2d 566, 571 (Ill. App. Ct. 2008) (describing a contract "prepared by a party in a superior bargaining position, without allowing the other party to negotiate any terms"); *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 366-67 (7th Cir. 1999) (describing a contract as "take-it-or-leave-it").

But Illinois courts regularly uphold such contracts as "a fact of modern life." *Kinkel*, 857 N.E.2d at 266. That Plaintiffs here were arguably "deprived of a meaningful choice" because their only choice was to accept Defendant's Terms of Service or to forgo taking their scheduled exams is insufficient to render their agreement to the Terms procedurally unconscionable. The court recognizes that the choice may have been a difficult one for Plaintiffs due to the potential consequences for their future education and employment. But "Illinois law does not void contracts where parties have unequal bargaining power, even if … 'consent to [the] agreement is secured because of hard

bargaining positions or the pressure of financial circumstances.'"  *Koveleskie*, 167 F.3d at

367, quoting *Kewanee Production Credit Association v. G. Larson & Sons Farms, Inc.*, 496

N.E.2d 531, 534 (Ill. App. Ct. 1986); see also *Streams Sports Club, Ltd. v. Richmond*, 457

N.E.2d 1226, 1232 (Ill. 1983) ("[M]ere disparity of bargaining power is not sufficient

grounds to vitiate contractual obligations[.]").  In fact, Illinois courts even enforce the

terms of contracts in which the plaintiff has no meaningful choice as to the provider of a

basic service such as electricity.  See *Williams*, 890 N.E.2d at 569 (enforcing a "contract of

adhesion" with plaintiff's electric provider when "there [was] no other provider of

electrical power in the area where plaintiff lives").

Moreover, a lack of meaningful choice must be the result of or compounded by

some fraud or other wrongdoing in order to render a contract procedurally

unconscionable.  See *Williams*, 890 N.E.2d at 571; *Koveleskie*, 167 F.3d at 367, quoting

*Kewanee Production*, 496 N.E.2d at 534.  Here, there is no indication in the record of any

fraud or other wrongdoing on the part of Defendant.  Therefore, the Terms of Service

are not procedurally unconscionable under Illinois law.

2. *Validity of the Forum-Selection Clause Under Federal Law*

Under federal law, forum-selection clauses are "prima facie valid and should be

enforced unless enforcement is shown by the resisting party to be 'unreasonable' under

the circumstances."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).  The

exception for forum-selection clauses that are "unreasonable under the circumstances"

is narrowly construed, and only applies in three circumstances:

(1) if their incorporation into the contract was the result of fraud, undue influence or overweening bargaining power; (2) if the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) if enforcement of the clauses would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

*Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993) (cleaned up).

First, Plaintiffs argue that their agreement to the Terms of Service was the result of overweening bargaining power. Given that disparity of bargaining power is one factor to be considered in determining procedural unconscionability, Plaintiffs renew many of the prior arguments regarding unconscionability under Illinois law. See *Jackson v. Payday Financial, LLC*, 764 F.3d 765, 777 (7th Cir. 2014) (describing unequal bargaining power and procedural unconscionability as "closely allied yet distinct concept[s]"). As previously summarized, Plaintiffs maintain that because they had already contracted with test administrators to take their respective exams without knowledge that Defendant would serve as proctor or of the relevant Terms of Service that would apply, they had no choice but to accept those Terms or to forgo taking their exams with potentially severe consequences for their employment and educational prospects.

But under federal law, as with Illinois law, there is no rule making contracts of adhesion unenforceable, and "they are generally upheld[.]" *Northwestern National Insurance Co. v. Donovan*, 916 F.2d 372, 377 (7th Cir. 1990). "[M]ere inequality of bargaining power does not of itself make every term of the contract unconscionable. The questions are rather whether the parties had a reasonable opportunity to read and

understand the term, and whether the term itself is unreasonable or oppressive."

*Northwestern National*, 916 F.2d at 377, quoting *Bastian v. Wausau Homes, Inc.*, 635 F.Supp. 201, 203-04 (N.D. Ill. 1986).

And, to invalidate a forum-selection clause under this first exception, "it is the inclusion of the forum selection clause that must be the result of some disparity in bargaining power, not simply the [objecting party's] decision to enter the entire contract" in general. *Costello v. Haller*, 2006 WL 1762131, at *4 (N.D. Ill. June 20, 2006), citing *M/S Bremen*, 407 U.S. at 12-13; see also *Midwest Biomedical Resources, Inc. v. Breas Medical, Inc.*, 2021 WL 2072129, at *3 (N.D. Ill. May 24, 2021) ("[T]he analysis of the validity of a forum-selection clause is distinct from that of the validity of the underlying contract."), citing *Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184, 199 (7th Cir. 2015); *Rouse Woodstock, Inc. v. Surety Federal Savings & Loan Association*, 630 F.Supp. 1004, 1009 (N.D. Ill. 1986) (collecting cases holding that the party objecting to a forum-selection clause "must show not merely a fraudulent transaction but fraud which goes to the selection of venue" specifically).  Therefore, a mere inequality in bargaining power overall does not necessarily render each individual term, including the forum-selection clause, unenforceable.  See *Northwestern National*, 916 F.2d at 377.

Here, although Plaintiffs reiterate arguments regarding procedural unconscionability and unequal bargaining power with respect to their acceptance of the Terms of Service generally, they do not allege that the forum-selection clause specifically was included as a result of fraud, undue influence, or overweening

13

bargaining power.  For example, the inclusion of a forum-selection clause may be invalid as a product of fraud or other overreaching if it was included "merely as a means of discouraging other parties to the contract from pursuing legitimate claims." *Doe v. Cultural Care, Inc.*, 2010 WL 3075711, at *3 (N.D. Ill. Aug. 3, 2010), citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (holding that forum-selection clause in cruise passengers' form contract was reasonable and enforceable where there was "no indication" that the designated forum was chosen to "discourag[e] cruise passengers from pursing legitimate claims").  But where, as here, "the forum specified in the contract is one and the same as the drafting party's principal place of business, the obvious convenience to that party militates against any finding that it acted in bad faith."  *Doe*, 2010 WL 3075711, at *3.

Therefore, Plaintiff has failed to show that the incorporation of the forum-selection clause into the contract was the result of fraud, undue influence or overweening bargaining power, and the clause will not be declared unreasonable or invalid under that first exception.

Second, Plaintiffs argue that it would be inconvenient for them to litigate in Alabama, especially when comparing their resources as students to Defendant's resources as a corporation with nationwide activities.  But by the clear language employed by the Supreme Court in *M/S Bremen*, a forum-selection clause will be held unreasonable under the second exception only if it will be so "gravely difficult and inconvenient that [a party] will for all practical purposes be deprived of [their] day in court."  407 U.S. at 18.  Nowhere do Plaintiffs advance an argument that they will,

14

essentially, be deprived of their day in court if they are required to litigate this case in the Northern District of Alabama.  Cf. *RBC Mortgage Co. v. Couch*, 274 F.Supp.2d 965, 970 (N.D. Ill. 2003) (holding that allegation of mere inconvenience does not satisfy "heavy burden of showing that party will for all practical purposes be deprived of his day in court" (internal quotations omitted)).  And, the court also notes that Plaintiffs are not proceeding pro se, and are therefore unlikely to be required to travel regularly to the Northern District of Alabama to pursue this matter themselves.  Rather, they are represented by nationwide counsel located not only in Illinois, but also in New York and Florida, who will presumably be as capable of litigating in Birmingham, Alabama, as in Urbana, Illinois.

Therefore, the court concludes that Plaintiffs will not be deprived of their day in court if this matter is transferred, and the court will not hold the forum-selection clause to be unreasonable or invalid under the second exception.

Finally, Plaintiffs argue that, because they were offered Defendant's Terms of Service on a "take-it-or-leave-it" basis, enforcement of the forum-selection clause would contravene strong Illinois public policy.  But Plaintiffs already advanced similar arguments regarding procedural unconscionability.  For the reasons discussed above, the court did not find that Plaintiffs' agreement to Defendant's Terms of Service, including the forum-selection clause, would be unconscionable under Illinois law.  As previously discussed, Illinois courts do not find contracts of adhesion or "take-it-or-leave-it" contracts to be inherently unenforceable or procedurally unconscionable.  See *Kinkel*, 875 N.E.2d at 266; *Koveleskie*, 167 F.3d at 267, citing *Kewanee Production*, 496

15

N.E.2d at 534. And Illinois policy generally favors enforcement of forum-selection clauses. See *Fabian v. BGC Holdings, LP*, 24 N.E.3d 307, 313 (Ill. App. Ct. 2014).

This court has already held that the Terms of Service, including the forum-selection clause, are not unconscionable or otherwise unenforceable under Illinois law. Therefore, the clause does not contravene a strong public policy of the state of Illinois and will not be invalidated under the third exception.

In sum, neither the Terms of Service nor the forum-selection clause are procedurally unconscionable nor invalid under Illinois or federal law.

B.  Section 1404(a) Factors

When a valid forum-selection clause applies, as it does here, ordinarily it should be enforced and the case should be transferred to the preselected forum. *Atlantic Marine*, 571 U.S. at 62. A plaintiff opposing enforcement of a forum-selection clause "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atlantic Marine*, 571 U.S. at 63. As previously indicated, the private interest factors normally considered under § 1404(a) are deemed to weigh entirely in favor of the forum previously agreed to by the parties, and the court must consider only the public interest factors: docket congestion and likely speed to trial, relative familiarity with the relevant law, and the relationship of each community to the controversy and the respective desirability of resolving the controversy in each locale. *Research Automation*, 626 F.3d at 978.

Only under "extraordinary circumstances" will the public interest factors warrant denial of transfer to the preselected forum. *Atlantic Marine*, 571 U.S. at 62; see also *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018) ("[B]ecause those [public interest] factors are rarely strong enough to override the parties' preselected forum, the practical result is that forum-selection clauses should control except in unusual cases." (internal quotations omitted)).

1. *Docket Congestion and Speed to Trial*

Defendant argues that the first public-interest factor, docket congestion and likely speed to trial, weighs in favor of transfer to Alabama. In support thereof, Defendant states that the average judgeship in the Northern District of Alabama had 421 pending cases for the 12-month period ending December 31, 2020, whereas the average judgeship in the Central District of Illinois had 587. See Administrative Office of the U.S. Courts, Federal Court Management Statistics (Dec. 31, 2020).[3] Defendant further maintains that, for the 12-month period ending June 30, 2020, the median time from filing to trial in civil cases was 31.2 months in the Northern District of Alabama, as compared to 38.3 months in the Central District of Illinois.[4]

---

[3] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile 1231.2020.pdf (last visited Nov. 18, 2021).

[4] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile 0630.2020.pdf (last visited Nov. 18, 2021).

By contrast, Plaintiffs argue that the Central District of Illinois resolves cases more quickly than the Northern District of Alabama, and that this factor therefore weighs against transfer.   Plaintiffs assert that the median time from filing to trial in cases in the Northern District of Alabama is 40.8 months, versus 38.3 months in the Central District of Illinois.  However, a review of Plaintiffs' citations indicates that their statistics for the Northern District of Alabama are for the 12-month period ending March 31, 2021,[5] as compared to the 12-month period ending June 30, 2020, for the Central District of Illinois.  Therefore, Plaintiffs are not citing statistics for comparable reporting periods.

Upon the court's own review, the Federal Court Management Statistics provide no statistics regarding the median time from filing to trial in civil cases in the Central District of Illinois for the periods ending September 30, 2020, December 31, 2020, and March 31, 2021.  Therefore, Defendant correctly compares the median times for the 12-month period ending June 30, 2020: 31.2 months in the Northern District of Alabama versus 38.3 months in the Central District of Illinois.

The court notes that statistics regarding the median time from filing to disposition in civil cases are, however, available for both Districts for the 12-month period ending March 31, 2021: 11.5 months in the Northern District of Alabama versus 9.8 months in the Central District of Illinois.

---

[5] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile 0331.2021.pdf (last visited Nov. 18, 2021).

Finally, for the same reporting period ending March 31, 2021, the average judgeship in the Northern District of Alabama had 403 pending cases, whereas the average judgeship in the Central District of Illinois had 568 cases.

Taking all these statistics into consideration, the public interest factor regarding docket congestion and speed to trial does not weigh wholly in favor of either forum. Although there are, on average, significantly more cases pending in the Central District of Illinois, the median time from filing to disposition in civil cases is nonetheless shorter in this District than in the Northern District of Alabama. However, the disparity is slight (9.8 versus 11.5 months), and the median time from filing to trial for civil cases is shorter in the Northern District of Alabama.

Therefore, the court finds that this factor does not outweigh the presumption that the forum-selection clause should be enforced and the case transferred to the Northern District of Alabama.

### 2. *Familiarity with Relevant Law*

The claims in this case are brought entirely pursuant to Illinois' BIPA. Plaintiffs assert that the second public interest factor, familiarity with relevant law, is therefore the most important factor weighing against transfer because federal courts in Illinois have more familiarity with BIPA than do federal courts in Alabama. For example, Plaintiffs indicate that, according to their research, federal district courts in Illinois have issued more than 100 opinions related to BIPA while district courts in Alabama have issued none. Plaintiffs further assert that BIPA is a unique and perhaps unsettled law

because it is the only statute in the country regulating biometrics that provides a private right of action, and Illinois courts continues to address issues of first impression in BIPA litigation.

Defendant argues this factor is neutral, as "federal judges routinely apply the law of a State other than the State in which they sit." *Atlantic Marine*, 571 U.S. at 67. Defendant maintains that BIPA is not an "exceptionally arcane" statute, and that a federal district court in Alabama is capable of researching Illinois law. *Atlantic Marine*, 571 U.S. at 67-68 (discussing whether there are "any exceptionally arcane features of Texas contract law that are likely to defy comprehension by a federal judge sitting in Virginia.").

The Seventh Circuit has cautioned district courts against "heavy reliance" on this second public interest factor, as it is contradictory to the Supreme Court's analysis in *Atlantic Marine* and the Court's continued "skepticism about the 'expertise' of a local district court in determining the content of a state's law." *In re Ryze Claims Solutions, LLC*, 968 F.3d 701, 708-09, n.16 (7th Cir. 2020), citing *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991).

Although this court is aware that legal developments in Illinois state court BIPA cases are ongoing, Plaintiffs have not cited to any features of BIPA that are "exceptionally arcane" nor to any recent Illinois state court decisions in support of that assertion. In arguing that BIPA is unique, Plaintiffs cite only to a post on the website of insurance broker Woodruff Sawyer (which, incidentally, the court notes has no offices in Illinois).

The court acknowledges that Illinois courts likely have had more exposure to and/or familiarity with BIPA.  See *Mutnick v. Clearview AI, Inc.*, 2020 WL 4676667, at *4 (N.D. Ill. Aug. 12, 2020) (denying motion to transfer from Illinois to New York when there was no forum-selection clause at issue).  But while federal district courts in Alabama have yet to issue an opinion on BIPA, numerous federal courts outside of Illinois, including the Second, Ninth, and Eleventh Circuit Courts of Appeals and federal district courts in California, Delaware, New York, North Carolina, and Washington, have considered and ruled on BIPA issues.

In fact, when reversing an Illinois state appellate court the Illinois Supreme Court recently cited with approval a holding from a BIPA case in the Northern District of California.  *Rosenbach v. Six Flags Entertainment Corp.*, 129 N.E.3d 1197, 1204 (Ill. 2019) (holding that the opinion issued in the Northern District of California was "correctly reasoned" and had predicted the Illinois Supreme Court's interpretation of a BIPA provision), citing *In re Facebook Biometric Information Privacy Litigation*, 326 F.R.D. 535, 545-47 (N.D. Cal. 2018).

Therefore, Plaintiffs have not met their burden of establishing that there are any "exceptionally arcane" features of BIPA that are likely to "defy comprehension by a federal judge" sitting in a district court outside of Illinois.  See *Atlantic Marine*, 571 U.S. at 67-68.  Thus, this factor likewise does not outweigh the presumption in favor of enforcing a valid forum-selection clause.

21

3.  *Desirability of Resolution in Each Community and Respective Community Relationships to the Controversy*

The court considers the final public interest factors – the respective desirability of resolving the controversy in each locale and the relationship of each community to the controversy – together.  See *South Capitol Bridgebuilders v. Lexington Insurance*, 2021 WL 1426888, at *5 (N.D. Ill. Apr. 15, 2021); *Midwest Biomedical*, 2021 WL 2072129, at *4; *Puroon, Inc. v. Midwest Photographic Resource Center, Inc.*, 2016 WL 6442184, at *4 (N.D. Ill. Nov. 1, 2016).

The court acknowledges that Illinois has "a strong interest in protecting the privacy rights of Illinois residents" including Plaintiffs.  *Mutnick*, 2020 WL 4676667, at *4; see also *In re Facebook Biometric Information Privacy Litigation*, 185 F.Supp.3d 1155, 1169 (N.D. Cal. 2016) ("BIPA manifests Illinois' substantial policy of protecting its citizens' right to privacy in their personal biometric data.").  But so too does Alabama have an interest in this case, as Defendant is headquartered in Alabama and relevant decisions are made at the Alabama headquarters, not in each of the individual states where its proctoring software may be used.  See *Perry v. Cable News Network, Inc.*, 2014 WL 4214873, at *5 (N.D. Ill. Aug. 25, 2014) ("CNN headquarters is located in Georgia, and CNN makes all pertinent decisions in Georgia"); *Camarena v. Vanderbilt Mortgage and Finance, Inc.*, 2015 WL 4036258, at *4 (N.D. Ill. July 1, 2015) ("It is Tennessee that has a real connection to this dispute, not Illinois. The case concerns the allegedly unlawful behavior of a Tennessee corporation. The material events occurred in that state, in the sense that the automated calls were planned and originated there.").

Considering the respective interests of Illinois and Alabama, the court concludes that these factors likely weigh in favor of Illinois, albeit only slightly.  And, in exercising the court's discretion to weigh all the factors under § 1404(a), these final factors – standing alone – do not outweigh the public interest factors that did not favor Illinois, nor can they render this case an "extraordinary" one in which the public interest factors outweigh the enforcement of a valid forum-selection clause.  *Atlantic Marine*, 571 U.S. at 62; see also *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) ("The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge."); *In re Ryze Claims Solutions*, 968 F.3d at 711 ("[A] forum-selection clause plays a very significant role in furthering vital interests of the justice system.  These clauses go a long way toward establishing predictability and certainty[.]" (cleaned up)).

For the foregoing reasons, the court will enforce the valid forum-selection clause contained in Defendant's Terms of Service and agreed to by Plaintiffs, and this matter will be transferred to the Northern District of Alabama.

IT IS THEREFORE ORDERED:

(1)  Defendant's Unopposed Motions for Leave to File Reply Memorandums (#31, 32) are GRANTED, and the Clerk is directed to docket the proposed replies (#31-1, 32-1).

(2)  Defendant's Motion to Transfer Venue (#23) is GRANTED.  The Clerk is directed to transfer this case to the U.S. District Court for the Northern District of Alabama.

(3)  Ruling on Defendant's Motion to Dismiss (#21) is reserved pending transfer to the Northern District of Alabama.

(4)  Defendant's prior Motion to Dismiss (#9) and Motion to Transfer Venue (#11) are DENIED as MOOT.

ENTERED this 23rd day of November, 2021.

<u>s/Colin Stirling Bruce</u>
COLIN S. BRUCE
U.S. DISTRICT JUDGE